UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————   )
                                                              )
IN RE SCIENTIFIC-ATLANTA, INC.          )    CASE NO:
SECURITIES LITIGATION                        )    1:06MS00435
———————————————————   )
                                                              )

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO QUASH OR MODIFY SUBPOENA SERVED ON THE SECURITIES AND EXCHANGE COMMISSION OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

## I.    INTRODUCTION

The Motion to Quash filed by Scientific-Atlanta, Inc. ("SFA" or the "Company"), James F. McDonald and Wallace G. Haislip (collectively "Defendants") attempts to prevent Plaintiffs from receiving documents to which they are clearly entitled. This federal securities case has survived Defendants' motion to dismiss before both the district court and the court of appeals. The PSLRA stay on discovery was lifted more than three years ago. Nonetheless Defendants seek to obstruct Plaintiffs' discovery efforts here. As detailed below, Defendants have no legitimate basis for attempting to quash the subpoena served on the Securities and Exchange Commission ("SEC"). Therefore, this Court should deny Defendants' motion in its entirety.

## II.    FACTS AND BACKGROUND

Plaintiffs filed a consolidated class action complaint against Defendants on January 31, 2002, alleging violations of the Securities Exchange Act of 1934 by,

- 1 -

*inter alia*, issuing false and misleading statements regarding demand for the Company's products and entering into side agreements that violated Generally Accepted Accounting Principles ("GAAP"). *See generally* Def. Exh. H. The method by which Defendants were able to achieve their sales targets was through various channel-stuffing activities, including inducing customers to accept product before it was actually needed or wanted. *Id.* The Complaint specifically details that the Company engaged in its channel-stuffing activities with its largest customers, including Adelphia Communications Corp ("Adelphia"). *Id.* Defendants' challenge to the Complaint was rejected by both the district court and the Eleventh Circuit Court of Appeals. *Phillips v. Scientific-Atlanta, Inc.., et al.*, 374 F. 3d 1015 (11th Cir. 2004); *In re Scientific-Atlanta, Inc. Sec. Litig.*, 239 F. Supp. 2d 1351 (N.D. Ga. 2002).

Subsequently, during discovery, the parties were unable to agree upon the scope of Plaintiffs' document requests, and Plaintiffs were forced to file a motion to compel. The Court ordered Defendants to produce documents from January 2000 to June 2002 for the Company's ten largest customers, including Adelphia. *See* May 27, 2005 Motion to Compel Order at 7, attached hereto as Exhibit A. Defendants also sought to quash subpoenas to SFA's customers, including Adelphia, in the Northern District of Georgia. Defendants' motion to quash with

respect to Adelphia was denied for lack of jurisdiction.  *See* January 4, 2005 Motion to Quash Order, attached hereto as Exhibit B.

Plaintiffs served a subpoena on the SEC for documents pertaining to the complaint that the SEC filed against the Company.  *See* Def. Exh. A.  The SEC indicated its willingness to produce documents to Plaintiffs, and it indicated that it would have done so already but for Defendants' motion to quash.  *See* September 21, 2006 Letter from Celia L. Jacoby to Meryl W. Edelstein, attached hereto as Exhibit C.[1]

## III.    ARGUMENT

As an initial matter, SFA lacks standing to bring its motion.  Federal Rule of Civil Procedure 45 provides that challenges to a third party subpoena *duces tecum* must be brought by the third party – the entity to which the subpoena is directed. Fed. R. Civ. P. 45(c)(2)(B).  Absent a claim of privacy or privilege with respect to the discovery at issue, a party lacks standing to challenge a subpoena.  *State of Florida v. Jones Chemical, Inc.,* 1993-2 Trade Cases ¶70,337; 1993 WL 388645, *2 (M.D. Fla. 1993) (*quoting Hunt Int'l Resources Corp. v. Binstein,* 98 F.R.D. 689, 690 (N.D. Ill. 1983) (other citations omitted); *see also* Wright & Miller, 9A Federal Practice and Procedure §2459; *Brown v. Braddick,* 595 F.2d 961, 967 (5th

---

[1]  All objections asserted by the SEC to the subpoena were resolved by agreement as set forth in Exhibit C.

Cir. 1979); *Liberty Mut. Fire Ins. Col v. Ravannack, et al.,* No. Civ. A. 00-1209,
2002 WLL 1770936 at *2 (E.D. La. 2002).

In this case, Defendants have proffered no argument that the documents
sought are privileged, nor have they claimed a privacy right to such documents.
Rather, Defendants' sole basis for their motion is their claim that the discovery
stay in the Adelphia MDL proceedings[2] precludes Plaintiffs in the instant case
from obtaining documents.[3]  Accordingly, it is the SEC, not Scientific-Atlanta, that
possesses standing to assert any arguments to quash or otherwise modify the
subpoenas.  Fed. R. Civ. P. 45 (c)(2)(B); Wright & Miller, 9A Federal Practice and
Procedure §2459 at 41; *Windsor v. Martindale,* 175 F.R.D. at 668.  As noted
above, the SEC does not object to the production of documents.  *See* Exhibit C.
Thus, Defendants' motion should be denied.

However, even assuming *arguendo* that this Court were to find that
Defendants possess standing to challenge Plaintiffs' subpoena, their arguments still
fail.  Although subpoenas issued pursuant to Rule 45 are subject to the discovery
scope and limits of Rule 26, those parameters are extensive.  Courts have long held

---

[2] The Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §
78u-4, provides that discovery is stayed pending resolution of a motion to dismiss.

[3]  Defendants improperly attempt to reserve a right to assert other objections to the
SEC subpoena.  *See* Def. Mem. at 5 n. 7.  Such an attempt should not be
countenanced by this Court, and any objections not asserted in Defendants' initial
motion should be deemed waived.

that the rules of discovery are intended to provide robust and open discovery.

*Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 392 (1947). It has been held

that Plaintiffs are entitled to discovery of any non-privileged matter, so long as

"the information sought appears reasonably calculated to lead to the discovery of

admissible evidence." *Degen v. United States*, 517 U.S. 820, 825, 116 S.Ct. 1777,

1782 (1996); *Burger King Corp. v. C.R. Weaver, et al.,* 169 F.3d 1310, 1320 (11th

Cir 1999) (quoting Fed. R. Civ. P. 26(b)(1)). The scope of relevant discovery is

not limited to the four walls of the pleadings. *See, e.g., In re Folding Carton*

*Antitrust Litig.*, 76 F.R.D. 420 (N.D. Ill. 1977). Instead, relevance "is interpreted

broadly to afford the parties liberal access to evidence in advance of trial." *Quaker*

*Chair Corp. v. Litton Bus.Sys., Inc.*, 71 F.R.D. 527, 531 (S.D.N.Y. 1976).

Recent amendments to Rule 26 have not changed this basic precept. *See e.g.*

*Beauchem v. Rockford Products*, No. 01 C50134m, 2002 WL 100405, at *1 (N.D.

Ill. Jan. 24, 2002) ("even as amended, Rule 26 allows the discovery plaintiff

seeks."); *see also Stewart v. Mitchell Transp.,* Civil  Action No. 01-2546-JWL,

2002 WL 1558210, at *4 (D. Kan. July 8, 2002). In fact, a court has reaffirmed

that "[r]elevancy is broadly construed, and a request for discovery should be

considered relevant if there is 'any possibility' that the information sought may be

relevant to the claim or defense of any party. A request for discovery should be

allowed 'unless it is clear that the information sought can have no possible bearing'

on the claim or defense of a party." *B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*, No. 01-2410-JAR., 2003 WL 21939019, at *2 (D. Kan. Jul. 22, 2003). The new language of Rule 26 makes explicitly clear that Plaintiffs are entitled to discover information relevant to not merely the substance of their own claims, but also any information that would either support or refute Defendants' responses and/or defenses to those claims. *See* Fed. R. Civ. P. 26(b)(1).

The discovery at issue here is clearly permissible, because Plaintiffs' Complaint contains allegations that are substantively identical to the allegations in the SEC complaint, such as the following:[4]

> Plaintiffs' Consolidated Class Action Complaint
> Adelphia, one of SFA's three largest accounts in fiscal year 2001 according to the Company's Form 10-K filed August 15, 2001 (the "2001 Form 10-K"), and the MSO forecasted to have a 14% market share at the end of 2001, with 14% of the total market (behind AT&T Broadband with 26%, Comcast Corporation with 15% and Time Warner Cable with 14%, according to a November 28, 2000 Business Wire release), also received "special terms" to pull sales and bookings into the third quarter of 2001, according to a former credit analyst. During the third quarter of 2001, SFA agreed to allow Adelphia to pay once per quarter, rather than the net 30 terms that Scientific-Atlanta traditionally gives its customers. Because Adelphia was such a large account, the former credit analyst explained, Defendant Haislip was personally involved in the Adelphia deals, and Haislip approved the extended payment terms for Adelphia.

> Def. Exh. H at ¶ 120.

---

[4] Scientific Atlanta operates on a fiscal year basis from July 1 to June 30, whereas Adelphia operates on a calendar year basis.

The Company's financial statements were also not in compliance with GAAP because "side" agreements existed which were not properly documented so as to provide reasonable assurances that sales transactions affected by said "side" agreements were properly accounted for in accordance with generally accepted accounting principles.

Def. Exh. H at ¶ 139.

The former customer program manager explained that the Company always reviewed upcoming orders but, by the fourth quarter, was reviewing upcoming orders almost weekly. When the numbers weren't at the level needed, the employee said, Pat McCabe, Vice President of Finance, called the program managers and sales staff and instructed them to pull sales in early. Directives to move sales into earlier quarters to meet goals even came by email.

Def. Exh. H. at ¶ 198.

In the fourth fiscal quarter 2001, Mr. McCabe gave the directive to pull sales in early, and Scientific-Atlanta's sales staff acted on this instruction.

Def. Exh. H. at ¶ 199.

<u>SEC Complaint</u>

In August 2000, Adelphia asked Scientific-Atlanta to consider entering into the marketing support agreement. Adelphia requested marketing support retroactive to the beginning of 2000, and continuing throughout the life of its long-term purchase contract with Scientific-Atlanta.

Def. Exh. C at ¶ 12.

The long-term purchase contract required that Adelphia purchase 350,000 set-top boxes per quarter in 2001. Scientific-Atlanta became aware in June 2001 that Adelphia was going to be ordering fewer set-top boxes than required under the contract due to decreased demand, and it appeared that Adelphia would not order sufficient set-top boxes

to cover the $22.4 million in market support payments Scientific-Atlanta was obligated to make for calendar year 2001.

Def. Exh. C at ¶ 17.

In June 2001, when Adelphia advised Scientific-Atlanta that it would be ordering fewer set-top boxes, Scientific-Atlanta requested that Adelphia order 240,000 set-top boxes pursuant to the long-term purchase contract by the end of the fiscal quarter. Scientific-Atlanta offered Adelphia a price reduction on the June order. Adelphia agreed to purchase the 240,000 set-top boxes.

Def. Exh. C. at ¶ 19.

Clearly, the documents Plaintiffs seek from the SEC are relevant to their claims, or, at the very least, may lead to relevant evidence. In fact, Defendants have even conceded as much, as their responses to Plaintiffs' Third Request for the Production of Documents state that Defendants have agreed to produce documents regarding the Company's relationship with Adelphia (which would include documents regarding the marketing support payments), notwithstanding their objection regarding the discovery stay in the Adelphia MDL case. *See* Def. Exh. G.

Throughout this case, Defendants have continually attempted to restrict and define Plaintiffs' claims, and each time, their argument has failed. In his order on Plaintiffs' motion to compel, Northern District of Georgia Judge Story noted that "[a]s the Court previously stated, Plaintiffs have alleged numerous false and misleading statements that are not limited to digital set-top boxes or to bill and

hold transactions.  Plaintiffs are entitled to discover any evidence that may reasonably lead to any admissible evidence as to the claims and defenses raised in Plaintiffs' Complaint and Defendants' Answer." *See* Exhibit A at 7.  Additionally, the Court specifically ruled that Plaintiffs were entitled to documents regarding SFA's transactions with Adelphia for a 2 ½ year time span, including the time frame when these marketing support payments occurred. *See id.*  Defendants' argument that Judge Story did not find that the marketing support transactions were relevant to Plaintiffs' claims is misleading – in fact, that issue was simply not addressed at all in the motion to compel briefing.

Defendants' other various arguments fail, as well.  For instance, Defendants' argument that they have never agreed that discovery regarding Adelphia would be relevant is meritless.  *See* Def. Mem. at 11.  As an initial matter, it is the court, not Defendants, that determines whether a particular subject matter is relevant to Plaintiffs' claims.  Furthermore, Defendants never objected to the subpoena Plaintiffs issued to Adelphia in its jurisdiction, notwithstanding the fact that the subpoena covered the very topics about which Defendants are now complaining. *See* Adelphia subpoena, attached hereto as Exhibit D.  Defendants cannot explain why Plaintiffs would be entitled to documents originating from Adelphia but not the Company's own documents on the same subject matter.  Furthermore, Adelphia produced documents to Plaintiffs regarding marketing support

transactions despite the Adelphia MDL and the fact that it was in bankruptcy proceedings; it did not claim such discovery was barred or stayed.

Essentially, Defendants seek a ruling that a discovery stay pursuant to the PSLRA in one securities class action against a company prevents all discovery against that company, even in connection with a case to which the PSLRA stay is not applicable. Defendants provide no support for such an untenable position, and, in fact, courts have held to the contrary. For instance, in *In re First Energy Shareholder Deriv. Litig.*, 219 F.R.D. 584, 586 (N.D. Ohio 2004), the court found that even though securities fraud claims and shareholder derivative claims included similar facts, that was insufficient to bring the derivative claims within the ambit of the PSLRA's discovery stay. It stated that it "endeavor[ed] to secure the just, speedy, and inexpensive determination of every action. Any exchange of information, otherwise discoverable in this derivative action, facilitates the purpose of Fed. R. Civ. Proc. 1." *Id.* at 586-87 (internal citation omitted). The court allowed discovery to proceed in the derivative case.

Similarly, the court in *In re Cisco Systems, Inc. Sec. Litig.*, No. C 01-20418 JW, 2002 WL 32987531, at * 3 (N.D. Cal. Jan. 30, 2002), determined that

> [t]he plain language of the [PSLRA] clearly states that this Court may stay discovery proceedings before the State Court, only as *necessary* in aid of its jurisdiction. Accordingly, Defendants, as the moving party, possess the burden of showing that such a stay is, in fact, necessary. In this case, however, Defendants have failed to make such a showing. The Court is unconvinced by Defendants' arguments as to

> the propriety of this stay. The mere existence of a parallel state court derivative action, based upon the same factual allegations as the relevant federal securities class action, on its own, is not sufficient to justify the imposition of a stay as provided for in § 78u-4(B)(3)(D) of SLUSA. at *3.

*See also Tobias Holdings, Inc. v. Bank United Corp.*, 177 F. Supp. 2d 162, 168-69 (S.D.N.Y. 2001). In this case, Defendants have proffered nothing more than an argument that there is a discovery stay in the Adelphia MDL litigation and therefore, Plaintiffs should be stayed from receiving documents in a case in which there is no stay.[5] Such an argument cannot withstand muster.

The cases upon which Defendants rely for their proposition that the PSLRA's discovery stay applies to the subpoena are inapposite. The court's decision in *In re Carnegie Int'l Corp. Sec. Litig.*, 107 F. Supp. 676 (D. Md. 2000) was premised upon the fact that the third party subpoena (addressed to the auditor of the defendant company) was issued in a case in which a motion to dismiss was pending. By contrast, in the instant case, a motion to dismiss has already been denied, and the PSLRA stay is over.

Defendants' reliance on *Dushkin Publ'g Group, Inc. v. Kinko's Serv. Corp.*, 136 F.R.D. 334 (D.D.C. 1991) and *Donovan v. Lewnowski*, 221 F.R.D. 587 (S.D. Fla. 1994), is similarly misplaced. Neither *Dushkin* nor *Donovan* involve a

---

[5]  Therefore, the court's decision in *Shwartz v. TXU Corp.*, 3:02-CV-2243-K, 2004 WL 1732477 (N.D. Tex. July 30, 2004), which specifically found that its jurisdiction to rule upon the motion to dismiss would be compromised if discovery proceeded in the parallel state action, is irrelevant to this court's determination.

securities lawsuit, and neither implicates the PSLRA's discovery stay.
Additionally, both cases simply involve discussions of whether to apply comity to
another court's determination that documents already produced are protected under
a confidentiality order. *Dushkin*, 136 F.R.D. at 335-36; *Donovan*, 221 F.R.D. at
588. As Defendants have not produced documents in the Adelphia MDL litigation,
they cannot rely on comity grounds as a reason why documents should not be
produced pursuant to the SEC subpoena.

The argument Defendants raise may be applicable in cases where the
securities claims and other claims are in the same procedural posture and the court
coordinates discovery for purposes of judicial economy. That is not the case here,
where it has been three years since the PSLRA stay was lifted and judicial
economy would be thwarted by placing a stay on discovery now.

Defendants also improperly rely upon *AOL Time Warner*, No. MDL NO.
1500, 02 Civ.8853 (SWK), 2003 WL 22227945 (S.D.N.Y. Sept. 26, 2003), which
premised its finding that discovery in the ERISA action should be stayed on the
fact that the same counsel represented the ERISA and securities plaintiffs. 2003
WL 22227945, at * 2. That is not the case here; Plaintiffs' counsel are not
involved in any of the Adelphia MDL proceedings.

Defendants also cite to a number of cases that speak in generic terms about
the purposes of the PSLRA's discovery stay. *See* Def. Mem. at 5-7. This

discussion is irrelevant in these circumstances, as Plaintiffs have already survived the motion to dismiss. The discovery at issue is not the alleged proverbial "fishing expedition" that the PSLRA was trying to prevent.

As Defendants note, Plaintiffs are not involved in the Adelphia MDL case. *See* Def. Mem. at 10-11. Defendants also do not contend that Plaintiffs here are seeking documents as part of the Adelphia MDL litigation. *See generally* Def. Mem. Any documents received pursuant to the subpoena cannot be used in any other case due to the confidentiality order that has been entered. *See* Stipulated Order Regarding Confidential Information, attached hereto as Exhibit E. Therefore, Defendants have no legitimate concern that documents received in the Scientific Atlanta securities class action will be used in any other litigation.

Plaintiffs submit that the proper inquiry on this motion is whether the Defendants have standing and whether Plaintiffs have satisfied the standards under Rule 26. Because Defendants must produce documents regarding SFA's relationship with Adelphia, the only question remaining is when. The PSLRA stay in this case was lifted when Plaintiffs' complaint was sustained, and Defendants have not shown why Plaintiffs are not entitled to the documents now. It is of no consequence that Defendants are involved in different litigation, with different plaintiffs, where there may be a stay. Plaintiffs request that Defendants' motion be

denied in its entirety.  A proposed order denying Defendants' motion is attached hereto as Exhibit F.

Respectfully submitted this 12th day of October, 2006.

_____
Tracy D. Rezvani
D.C. Bar No. 464293
**Finkelstein, Thompson & Loughran**
The Duvall Foundry
1050 30th Street, N.W.
Washington, DC 20007

*Local Counsel for Plaintiffs*

**CHITWOOD HARLEY HARNES, LLP**
Craig G. Harley
Meryl W. Edelstein
1230 Peachtree Street
2300 Promenade II
Atlanta, Georgia  30309
Tel:  (404) 873-3900
Fax:  (404) 876-4476

**KELLER ROHRBACK, LLP**
Lynn L. Sarko
Juli Farris
Elizabeth A. Leland
1201 Third Avenue, Suite 3200
Seattle, Washington  98101-3052
Tel:  (206) 623-1900
Fax:  (206) 623-3384

*Co-Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE SCIENTIFIC-ATLANTA, INC. SECURITIES LITIGATION | ) ) ) ) ) | CASE NO. 1:06MS00435 |

## CERTIFICATE OF SERVICE

This is to certify that on October 12, 2006, I served a true and correct copy of "PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO QUASH OR MODIFY SUBPOENA SERVED ON THE SECURITIES AND EXCHANGE COMMISSION OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER SUBPOENA IN A CIVIL CASE" by United States mail, upon counsel as indicated below:

Oscar N. Persons
Susan E. Hurd
**ALSTON & BIRD, LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

Celia L. Jacoby
**U.S. Securities and Exchange Commission**
Office of the General Counsel
100 F Street N.E.
Washington, D.C. 20549

This 12th day of October, 2006.

Arzie L. Exum

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
|  | : |  |
|  | : |  |
| IN RE SCIENTIFIC ATLANTA, | : | CIVIL ACTION NO. |
| INC. SECURITIES | : | 1:01-CV-1950-RWS |
| LITIGATION, | : |  |
|  | : |  |

### ORDER

Now before the Court for consideration is Plaintiffs' First Motion to

Compel Documents [111] and Defendants' Motion for Protective Order [130].

After considering the entire record and the arguments of the parties, the Court

enters the following Order.

### Background

The above captioned lawsuit is a putative securities class action. The

Complaint alleges that Plaintiffs and others purchased Scientific-Atlanta

securities at an artificially inflated price as a result of false and misleading

representations made by the persons controlling Scientific-Atlanta during the

relevant time period.[1]  Plaintiffs allege that Defendants violated Sections 10(b)

and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), as

---

[1]The putative class period runs from January 18, 2001 to August 16, 2001.

amended by the Private Securities Litigation Reform Act of 1995 and Rule 10b-5 promulgated thereunder.

By an Order entered December 23, 2002 (the "December 23 Order") [49], the Court denied Defendants' Motion to Dismiss. In the December 23 Order, the Court analyzed Plaintiffs' claims for securities fraud and characterized the statements and omissions which Plaintiffs contend were false or misleading. The Court characterized these statements generally as: (1) Plaintiffs' contention that Defendants falsely reported that demand was accelerating when demand was falling for Scientific-Atlanta and its customers, by distinguishing Scientific-Atlanta from its competitors, de-emphasizing the expected effect of the loss of business from AT&T, and failing to disclose cutbacks in production; (2) Plaintiffs' allegation that Defendants propped up demand with undisclosed channel stuffing by artificially stimulating revenue in the short term through various means; and (3) Plaintiffs' assertions that Defendants improperly recognized revenue in violation of the Generally Accepted Accounting Principles. The Court held that Plaintiffs had stated a claim for securities fraud under section 10(b) of the Exchange Act and Rule 10b-5 and denied Defendants' Motion to Dismiss.

2

Plaintiffs served their First Request for Production of Documents on February 21, 2003.  The parties exchanged correspondence regarding the scope of the requests.  By a letter dated March 24, 2003, Defendants outlined their initial objections.  (<u>See</u> Pls.' Mot. to Compel Ex. C, Letter from Susan E. Hurd to David Bain ("March 24 Letter").)  Subsequently, discovery was stayed while Defendants appealed the denial of their motion to dismiss.  After the Court's ruling was upheld, the Court held a status conference and discovery recommenced.  Plaintiffs then responded to the March 24 Letter by a letter dated December 13, 2004.  (See Pls.' Mot. to Compel Ex. D, Letter from Craig Harley to Susan E. Hurd ("December 13 Letter").).  Plaintiffs responded to Defendants' objections and offered specific limitations on certain of the requests to produce.  Defendants replied by a letter dated January 3, 2005.  (<u>See</u> Pls.' Mot. to Compel Ex. E, Letter from Susan E. Hurd to Craig G. Harley ("January 3 Letter").)

On January 4, 2005, the Court entered an Order specifically addressing the scope of discovery in this case.  In early 2003, Plaintiffs had served subpoenas on several of Scientific-Atlanta's customers and the two companies that served as auditors for Scientific-Atlanta.  Defendants sought to quash or

3

modify the third-party subpoenas.  In the January 4 Order, the Court found that

Defendants had standing to raise the objections to the subpoenas issued to non-

parties and granted in part and denied in part Defendants' requests.  The Court

specifically found that "Plaintiffs should not be limited to the putative class

period in seeking discovery."  (January 4 Order at 11.)  The Court declined to

adopt Defendants' narrow characterization of the Complaint and went on to

state that "Defendants' contention that discovery should be restricted solely to

the digital set-top boxes is unduly restrictive."  (<u>Id.</u> at 14.)

     After the Court issued the January 4 Order, Plaintiffs again wrote to

Defendants to inquire whether, in light of the Order, Defendants would

reconsider their positions.  (Pls.' Mot. to Compel Ex. F, Letter from Craig G.

Harley to Susan Hurd dated January 12, 2005.)  Defendants declined to

reconsider their position regarding the scope of discovery.  (Pls.' Mot. to

Compel Ex. G, Letter from Susan E. Hurd to Craig G. Harley dated January 14,

2005.)  On February 1, 2005, Plaintiffs filed their First Motion to Compel

Production of Documents.

AO 72A
(Rev.8/82)

## Discussion

Plaintiffs First Request for Production of Documents was dated February 21, 2003.  Defendants served their response and objections on March 26, 2003. The parties have engaged in discussions regarding the scope of discovery, both before the stay pending appeal and after the stay, but Defendants have not yet produced any documents in this case.  In the correspondence regarding the scope of discovery the parties have offered various compromises but were not able to reach agreement.

Plaintiffs' motion argues that Defendants have unjustifiably narrowed the scope of Plaintiffs' Complaint and therefore, seek to unduly restrict the scope of discovery.  Specifically, Plaintiffs argue that Defendants have attempted to unilaterally impose unduly restrictive interpretations of (1) the relevant time period; (2) the relevant subject matter; and (3) which of the locations in which Defendants must search for responsive documents.  Defendants respond that Plaintiffs' requests are overbroad and unduly burdensome.  Defendants have also raised various objections to specific requests to produce.  The Court has carefully reviewed the parties' motions and has considered their arguments and

AO 72A
(Rev.8/82)

objections.  Accordingly, the Court imposes the following limitations on

discovery.

## I.    "Global Objections"

### A.    Time Period

In Plaintiffs' First Request for the Production of Documents, Plaintiffs

defined the relevant time period as January 1, 2000 to present.  Defendants

contend that the time period should be restricted to the putative class period

from January 18, 2001 to August 16, 2001.  Again, the Court finds that Plaintiffs

should not be limited to the putative class period in seeking discovery.  The

Court finds that the relevant time period should be January 1, 2000 to June 30,

2002.  Defendants shall affirmatively search for documents that were created

before and after the relevant time period for documents that refer to the relevant

time period.

### B.    Subject-matter

Defendants contend that the subject matter of discovery should be limited

to a single product manufactured by Defendant, Scientific-Atlanta, the digital

set-top box.  Defendants have agreed to produce documents related to the

6

digital set-top box and to certain specific equipment meant to be used with the

digital set-top box.  As the Court has already stated in the January 4 Order,

Defendants' characterization of Plaintiffs' Complaint is unduly restrictive. The

Court declines to limit Plaintiffs' requests in this manner.  As the Court

previously stated, Plaintiffs have alleged numerous false and misleading

statements that are not limited to digital set-top boxes or to bill and hold

transactions.  (See January 4 Order at 13-14; December 23 Order at 17-18.)

Plaintiffs are entitled to discover any evidence that may reasonably lead to any

admissible evidence as to the claims and defenses raised in Plaintiffs' Complaint

and Defendants' Answer.[2]

As to Request numbers 5, 6, 17, 18, 23, and 24 Defendants may limit the

customer files produced to the top ten subscriber customers and the top ten

transmission customers.

_____

[2]The Court is aware that this description is not particularly instructive in setting the parameters of the scope of the subject-matter of discovery.  While the Court has made clear that the scope of discovery is not limited to the digital set-top box, nor are Plaintiffs entitled to conduct a wholesale fishing expedition into every product produced by Defendants.  Having rejected the parties' extreme positions on the scope of the subject-matter of discovery, the Court expects that the parties will work toward a mutually agreeable definition of subject-matter to guide them in defining the relevant documents to be produced as to all of Plaintiffs' Requests to Produce.

7

### C.    Location of Production

Defendants shall produce documents located at its Lawrenceville, Georgia headquarters, its office in El Paso, Texas and its plant in Juarez, Mexico.  The Court declines to limit Defendants' production to English language documents. If  Defendants are able to conduct business in a language other than English in its Mexico plant, the Court presumes that Defendants also have personnel who may review those documents for production.  However, Defendants shall not be required to provide English language translations of the documents and may produce them in the language in which the documents are maintained in the ordinary course of business.

Defendants shall not be required to produce documents from other locations initially.  After this production takes place, however, Plaintiffs may seek discovery from Defendants from additional locations as to specific customers and specific allegations of the Complaint, if necessary.

## II.    Specific Objections

Defendants have raised various other objections as to specific Requests. The Court expects that given the above rulings regarding the "global issues," the parties will be able to reach agreement as to most of these objections– especially

those concerning relevancy.[3]  Even so, the Court finds that it may be helpful to

provide the following guidance as to certain specific Requests.[4]

Request No. 52, 54: Defendants shall produce documents pursuant to

these Requests, with the clarification that Defendants are not required to create

any such documents, but shall only be required to produce documents already

in existence.

Request No. 32:  Defendants may limit production to documents

generated in the ordinary course of business and maintained at the workplace for

business purposes.

Request No. 64-67, 71: Defendants may limit production to documents

generated in the ordinary course of business and maintained at the workplace for

business purposes.  Defendants may also limit production to materials relevant

to claims and defenses in the case as defined by the parties.  Additionally,

---

[3]If after negotiating in good faith in light of the rulings in this Order, the parties are still not able to reach agreement, the parties may renew their motions as follows.  Rather than engaging in lengthy additional briefing, the parties may renew their motion by simply filing a motion that sets out the specific requests that have not been resolved by the parties. The Court will review the requests and resolve the issues based on the briefs presently before the Court.

[4]The parties may agree to further limit these requests pursuant to the Court's rulings regarding relevant time period and any agreement that the parties reach regarding relevant subject-matter.

Defendants may limit production to individuals at the level of Vice President and above.

Request No. 70: Defendants may limit production to documents generated in the ordinary course of business and maintained at the workplace for business purposes. Defendants shall not be required to produce employee or personnel files except as to named Defendants in this action.

Documents in the public domain: Defendants shall not fail to produce documents in their possession because the document is available in the public domain. Defendants are not, however, required to retrieve such documents from the public domain for the purpose of production to Plaintiffs, but shall only be required to produce such documents to the extent that they are already in their possession.

SEC Documents, Request Numbers 38, 39, 47, 65: Defendants should not construe these requests as solely limited to the investigation related to Adelphia.

Finally, in imposing the above restrictions on discovery in this case, the Court has considered the proper scope of discovery under the Federal Rules of Civil Procedure and the claims and defenses raised by the parties in this action.

10

Although Defendants argue that the production of these documents would be unduly burdensome, having considered the needs of the case, the amount in controversy, the parties' resources, and the importance of the issues at stake in the litigation, the Court does not find that production in this case would be unduly burdensome to Defendants.

The Court is particularly troubled by Defendants' unwillingness to reconsider their positions on the scope of discovery in this case after the Court issued it January 4 Order which specifically addressed many of the objections raised in the voluminous briefing before the Court in the present motion.  It was not simply that the parties were not able to reach agreement after the issuance of the January 4 Order, but Defendants did not even see fit to engage in good faith negotiations after the Court issued an Order which raised serious doubts about many of Defendants' positions.[5]  The Court expects that this will not be a problem in the future and that the parties will work in good faith to resolve

---

[5]Defendants argue that the January 4 Order addressed subpoenas issued to non-party witnesses and, therefore, should not govern discovery for the party Defendants.  Defendants contend that discovery is more burdensome for them as compared to the non-parties addressed in the January 4 Order.  While it is apparent that discovery will create a greater burden on Defendants than to non-party witnesses– Defendants should not be surprised that a greater obligation would be imposed on a party as compared to a non-party.

remaining discovery disputes in light of this Order and the Court's prior rulings.

Failure to do so may result in sanctions and/or the Court's finding that good

cause exists to order discovery into any matter relevant to the subject matter of

the litigation.  See Fed. R. Civ. P. 26(b)(1) .

### Conclusion

Plaintiffs' First Motion to Compel Documents [111] and Defendants'

Motion for Protective Order [130] are **GRANTED in part and DENIED in

part**.

**SO ORDERED** this   27th   day of May, 2005.


/s/ Richard W. Story
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| | : | |
| IN RE SCIENTIFIC-ATLANTA, | : | CIVIL ACTION NO. |
| INC. SECURITIES LITIGATION | : | 1:01-CV-1950-RWS |
| | : | |
| | : | |
| | : | |

### ORDER

This case came before the Court for a hearing on Defendants' Motion to

Quash or Modify Subpoenas served on Ernst & Young, LLP and Arthur

Andersen, LLP or, in the alternative for Protective Order [86-1] and Defendants'

Motion to Quash or Modify Subpoenas served on Scientific-Atlanta's

Customers or, in the alternative for Protective Order [98-1].  Pursuant to the

Court's rulings at the hearing and considering the briefs and arguments of the

parties, the Court enters the following Order.

### Background

The above captioned lawsuit is a putative securities class action.  The

Complaint alleges that Plaintiff and others purchased Scientific-Atlanta securities

at an artificially inflated price as a result of false and misleading representations

made by the persons controlling Scientific-Atlanta during the relevant time period.[1]  Plaintiffs allege that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 and Rule 10b-5 promulgated thereunder.

By an Order entered December 23, 2002 (the "December 23 Order") [49], the Court denied Defendants' Motion to Dismiss.  In the December 23 Order, the Court analyzed Plaintiffs' claims for securities fraud and characterized the statements and omissions which Plaintiffs contend were false or misleading. The Court characterized these statements generally as: (1) Plaintiffs' contention that Defendants' falsely reported that demand was accelerating when demand was falling for Scientific-Atlanta and its customers, by distinguishing Scientific-Atlanta from its competitors, de-emphasizing the expected effect of the loss of business from AT&T, and failing to disclose cutbacks in production; (2) Plaintiffs' allegation that Defendants' propped up demand with undisclosed channel stuffing by artificially stimulating revenue in the short term though

─────────────────────

[1]The putative class period runs from January 18, 2001 to August 16, 2001.

2

various means; and (3) Plaintiffs' assertions that Defendants improperly

recognized revenue in violation of the Generally Accepted Accounting

Principles. The Court held that Plaintiffs had stated a claim for securities fraud

under section 10(b) of the Exchange Act and Rule 10b-5 and denied

Defendants' Motion to Dismiss.

The motions now before the Court relate to subpoenas issued by

Plaintiffs to non-parties to this litigation including Defendants' independent

auditors and customers. In February 2003, Plaintiffs served subpoenas on

several of Scientific-Atlanta's customers including: Adelphia Communications

Corp., AOL Time Warner, Inc., AT&T Corp., Cablevisions Systems Corp.,

Charter Communications, Inc., Comcast Corp., Cox Communications, Inc.,

Fox Cable Networks Group and Sony Entertainment. In March 2003, Plaintiffs

served subpoenas on Ernst & Young, LLP and Arthur Andersen, LLP. Arthur

Anderson was Scientific-Atlanta's auditor during the class period. Ernst &

Young began as Scientific-Atlanta's auditor in April 2002. The Court initially

denied the motions with a right to refile pending appeal. The Court held a status

conference on September 20, 2004. At that time the parties agreed to continue

to seek to reach an agreement regarding the scope of these subpoenas. The

3

parties have failed to reach an agreement and Defendants have refiled the Motions to Quash.

Defendants seek to quash or modify the subpoenas or in the alternative, a protective order. They assert that the subpoenas are overbroad as to time and subject-matter and request discovery that is unrelated to Plaintiffs' claims. Plaintiffs respond that this Court lacks jurisdiction to address objections to subpoenas issued by other districts and that Defendants lack standing to object to a subpoena served on a non-party. Plaintiffs argue that the subpoenas are appropriately directed toward Plaintiffs' claims and defenses raised in the Answer. The Court first considers whether Defendants' objections are properly before this Court.

## Discussion

**I.    Jurisdiction**

The subpoenas to which Defendants object were issued from various courts. Only the subpoenas issued to Ernst & Young and Cox Communications, Inc. ("Cox") were issued out of the Northern District of

4

Georgia.[2]  The Court finds that it is without jurisdiction to rule on objections to any subpoenas that were issued outside of this district.  As to the remaining subpoenas that were issued from other districts, only the court from which the subpoena issued has the authority to rule on Defendants' objections.  See In re Digital Equip. Corp., 949 F.2d 228, 230 (8th Cir. 1991) (holding that district court where underlying action was pending lacked jurisdiction to rule on objections to deposition subpoenas issued from another district).

Federal Rule of Civil Procedure 45(a)(2) provides that "a subpoena for production or inspection shall issue from the court for the district in which the production or inspection is to be made."  Fed. R. Civ. P. 45(a)(2).  The advisory committee notes to the 1991 Amendment to Rule 45 make clear that the subpoena must issue from the court in which the production would be compelled and, "[l]ikewise, the court in whose name the subpoena is issued is responsible for its enforcement."  Fed. R. Civ. P. 45 advisory committee notes; see In re Certain Complaints, 783 F.2d 1488, 1495 (11th Cir. 1986) (subpoenas issued under Fed. R. Civ. P. 45 constitute process of the issuing court and are

---

[2]The other subpoenas were issued by the Eastern District of Missouri, the Southern District of New York, and the Southern District of Florida.

5

enforced by that same court).

Subsection (c) of Rule 45 governs the protection of witnesses who have been served with subpoenas.  9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (2d ed. 2004). The text of Rule 45(c)(3)(A) provides that "the court by which a subpoena was issued shall quash or modify the subpoena" under certain circumstances.  Specifically it provides for protection if the subpoena (I) fails to allow reasonable time for compliance; (ii) requires a non-party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business; (iii) requires disclosure of privileged material; or (iv) subjects a person to undue burden.  Id.

The 1991 Amendment which created the current version of Rule 45 was created in part "to clarify and enlarge the protections afforded persons who are required to assist the court by giving information or evidence."  Fed. R. Civ. P. 45 advisory committee notes.   The focus of the amendment to Rule 45 is aimed at the protection of non-parties rather than the convenience of the parties.  See In re Sealed Case, 141 F.3d 337, 341 (D.C. Cir. 1998) ("It may well be true . . . that the trial court will be better able to handle discovery disputes.  But

6

Congress in the Rules has clearly been ready to sacrifice some efficiency in return for territorial protection for nonparties"); Wright & Miller § 2459 ("The 1991 amendments to Rule 45(c) now make it clear that motions to quash, modify, or condition the subpoena are to be made to the district court of the district from which the subpoena issued."). Therefore, the Court solely addresses Defendants' objections as to the subpoenas issued out of the Northern District of Georgia to Ernst &Young and Cox Communications.[3]

## II.    Standing

Plaintiffs assert that Defendants lack standing to object to subpoenas served on a non-party. Defendants contend that they have standing based on their personal right or interest in non-public documents provided to accountants and customers including competitively sensitive proprietary and confidential information.

As a general rule, a motion to quash or modify a subpoena *duces tecum*

---

[3]At the hearing, the Court suggested that it may be proper for the court from which the subpoena issued to transfer that motion to this Court for consideration. The Court notes, however, that there is some authority that suggested that a district court that issued a subpoena lacks the authority to transfer a motion to quash to the court in which the underlying case is pending. See In re Sealed Case, 141 F.3d 337, 341 (D.C. Cir. 1998) (noting that the transferee court would lack statutory authority to quash or enforce the other court's subpoena and would lack personal jurisdiction over the non-party).

7

may only be made by the party to whom the subpoena is directed.  <u>Smith v. Midland Brake, Inc.</u>, 162 F.R.D. 683, 685 (D. Kan. 1995).  Where a party alleges a personal right or privilege with respect to the materials subpoenaed, however, that party may have standing under Rule 45 to challenge the subpoena. <u>Brown v. Braddick</u>, 595 F.2d 961, 967 (5th Cir. 1979); <u>Stevenson v. Stanley Bostitch, Inc.</u>,  201 F.R.D. 551, 555 (N.D. Ga. 2001).[4]  While some courts have narrowly applied the exception and limited it to a demonstrated privilege, other courts have given the exception a more expansive reading.  <u>Compare</u> <u>Langford v. Chrysler Motors Corp.</u>, 513 F.2d 1121, 1126 (2d Cir. 1975) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness."); <u>Smith v. Midland Brake, Inc.</u>, 162 F.R.D. 683, 685 (D. Kan. 1995) (holding defendant corporation lacked standing to challenge subpoena directed at corporation's employee and requesting personnel files); <u>Fla. ex rel. Butterworth v. Jones Chems., Inc.</u>, No. 90-875-CIV-J-10, 1993 WL 388645, at *2 (M.D. Fla. Mar. 4, 1993) (party has standing based on attorney-client and work-product privileges) <u>with</u>, <u>Transcor,</u>

---

[4]The U.S. Court of Appeals for the Eleventh Circuit adopted as binding precedent the decisions of the U.S. Court of Appeals for the Fifth Circuit handed down prior to September 30, 1981.  <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981).

<u>Inc. v. Furney Charters, Inc.</u>, 212 F.R.D. 588, 591 (D. Kan. 2003) (corporation has personal right with respect to its bank accounts sufficient to give it standing to move to quash subpoenas); <u>Liberty Mut. Fire. Ins. Co. v. Ravannack</u>, No. CIV.A. 00-1209, 2002 WL 1770936, at *3 (E.D. La. Aug. 1, 2002) (insurance company has personal right to object to subpoena to company's employee requesting production of company's files); <u>Stewart v. Mitchell Transp.</u>, No. 01-2546-JWL, 2002 WL 1558210, at *2 (D. Kan. July 8, 2002) (company has personal interest in proprietary information); <u>New Park Entm't, LLC v. Elec. Factory Concerts, LLC,</u> No. CIV.A. 98-775, 2000 WL 62315, at *4 (E.D. Pa. Jan. 13, 2000) (company has personal right in documents containing confidential research, development and commercial information).

As to the Ernst & Young subpoena, Defendants contend that they provided non-public documents to Ernst & Young during their confidential relationship and that these disclosures may include documents protected by the attorney-client privilege or work product doctrine. As to the subpoena directed to Cox, Defendants assert that they have an interest in confidential business information shared with Cox during their business relationship. Plaintiffs argue that the Court should adopt the narrow view of the personal right or privilege

9

exception and find that Defendants lack standing because they cannot show a specific privilege and that the mere assertion of confidentiality is not sufficient to confer standing.

As the Court indicated at the hearing, the Court finds that Defendants have stated a sufficient personal interest in the information that Plaintiffs requested to confer standing for them to challenge the subpoenas. In so doing, the Court declines to adopt either a "narrow" or "expansive" view of the personal right or privilege exception.[5] Rather, the Court finds that Defendants standing argument finds support in the text of Rule 45. Section (c)(3)(B)(I) provides that "If a subpoena requires disclosure of a trade secret or other confidential research, development, or commercial information . . . the court may, to protect a person subject to or *affected by* the subpoena, quash or modify the subpoena." Fed. R. Civ. P. 45 (c)(3)(B)(I) (emphasis added); see New Park Entn't, 2000 WL 62315, at *5 (defendants have a personal right in documents that contain confidential research, development and commercial

---

[5]The case by case approach used in the cases cited above provides little guidance to the Court to determine whether Defendants have sufficiently stated a "personal right." The Court finds that in this circumstance the text of Rule 45 provides a greater measure of guidance.

information).  The advisory committee note to 45(c)(3)(B)(i) indicates that it

authorizes the court to quash, modify or condition a subpoena to protect the

person subject to or *affected by* the subpoena from unnecessary or unduly

harmful disclosures of confidential information.  Fed. R. Civ. P. 45 advisory

committee notes to 1991 Amendment.  Accordingly, the Court finds that

Defendants have shown a sufficient interest in seeking protection from harmful

disclosure of confidential information to assert standing to object to both the

Ernst & Young and Cox subpoenas

## III.    Relevancy Objections

### A.    Time Period

In the Ernst & Young subpoena, Plaintiffs requested documents

beginning on October 2, 1999 through calendar year 2003.  Defendants object

and argue that the time period should be limited to the putative class period

which runs from January 18, 2001 to August 16, 2001.  Defendants also point

out that Ernst & Young did not begin as Defendants' auditor until April 2002

which is after the close of the putative class period.

The Court finds that Plaintiffs should not be limited to the putative class

period in seeking discovery.  Notably, since Ernst &Young did not begin as

11

Defendants' auditor until April 2002, the burden should not be too great on Ernst & Young in producing these documents. Moreover, since Ernst & Young was Defendants' auditor during the fiscal year that contained the putative class period, there is the possibility that former auditor Arthur Andersen may have turned over relevant documents to Ernst & Young. As to the Ernst & Young subpoena, the Court finds that discovery should be confined to the following time period: October 2, 1999 to June 30, 2002.[6] As to the Cox Communications subpoena, Plaintiffs requested documents from January 1, 2000 through December 31, 2001. The Court finds that Plaintiffs are entitled to documents during this time period.[7]

---

[6]The putative class period runs from January 18, 2001 to August 16, 2001. The class period encompasses fiscal years 2001 (July 1, 2000 to June 30, 2001) and 2002 (July 1, 2001 to June 30, 2002). The Court finds that it is also relevant for Plaintiffs to conduct discovery during the fiscal year that preceded the class period, fiscal year 2000 (July 1, 1999 to June 30, 2000), beginning with the date of Plaintiffs' request on October 2, 1999.

[7]Defendants contend that they are "authorized" to make representations on behalf of Cox Communications. Defendants contend that Cox has not been properly served with the subpoena. The Court does not address this argument because it does not appear to be properly before the Court at this time. Assuming that service was not properly made on Cox Communications, nothing in this Order would preclude Cox Communications from raising the improper service in the event that Plaintiffs moved to compel its production of documents. Moreover, if Cox Communications were properly served, nothing would preclude it from moving to quash or modify the subpoena if it believes that it would be unduly burdensome.

**B.**    **Scope of subject-matter**

Defendants contend that Plaintiffs' requests are overbroad as to the subject-matter of documents requested.  Defendants characterize Plaintiffs' Complaint as asserting a claim for "improper revenue recognition purportedly designed to conceal declining demand for digital set-tops from January 18, 2001 through August 16, 2001."  (Defs.' Mot. to Quash [86] at 9.)  Plaintiffs respond that their requests are relevant to both the claims asserted in their Complaint and also to the defenses raised in Defendants' Answer.[8]

Federal Rule of Civil Procedure 26(b)(1) provides that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  Fed. R. Civ. P. 26(b)(1).  The scope of discovery under a subpoena is the same as the scope of discovery under Rule 26. Stewart, 2002 WL 1558210, at *3.  The Court declines to adopt Defendants' narrow characterization of Plaintiffs' Complaint.  In the December 23 Order, the Court noted that Plaintiffs have alleged numerous false and misleading

---

[8]Plaintiffs also contend that even if Defendants are found to have standing to assert privilege or confidentiality of documents, they should not be permitted to raise relevance objections.  Plaintiffs have pointed the Court to no authority to support this limited view of standing.

13

statements that are not limited to digital set-top boxes or to the bill and hold

transactions.  (See December 23 Order at 17-18.)

Under Rule 26, "[r]elevant information need not be admissible at the trial

if the discovery appears reasonably calculated to lead to the discovery of

admissible evidence ."  See B-S Steel of Kansas, Inc. v. Tex. Indus., Inc., No.

01-2410-JAR, 2003 WL 21939019, at *2 (D. Kan. July 22, 2003) ("A request

for discovery should be allowed 'unless it is clear that the information sought

can have no possible bearing' on the claim or defense of a party.")  Defendants'

contention that discovery should be restricted solely to the digital set-top boxes

is unduly restrictive.  The Court does not read Plaintiffs' Complaint as only

alleging misstatements as to this single product.  Even if this were the case,

however, Plaintiffs would still be entitled to discover documents as to other of

Defendants' products.  For example, if Plaintiffs could show that the data

known by Defendants on transmission products mirrored the data known by

Defendants as to the set-top boxes and Defendants made positive

representations as to one and negative representations as to the other– this could

be relevant to the scienter element of Plaintiffs' claim for securities fraud.

The Court is not inclined to identify the specific contours of Plaintiffs'

14

claims, however, but finds that Defendants' narrow characterization is not warranted. Plaintiffs are entitled to discover any evidence that may reasonably lead to any admissible evidence as to the claims or defenses raised in Plaintiffs' Complaint and Defendants' Answer.

### C.   Privilege and Work-Product

Defendants contend that they should be permitted to review the documents for attorney-client privilege and work-product before they are turned over to Plaintiffs. As to the Ernst & Young subpoena, as Defendants' auditor, the Court finds that they may have been privy to privileged documents. Therefore, the Court will allow Defendants to review documents produced by Ernst & Young before they are turned over to Plaintiffs. Defendants may have ten days from the time the documents are received to review the documents. Defendants should create a privilege log as to any documents for which it claims privilege. Defendants are cautioned to narrowly construe privilege– i.e. legal opinions, opinions in anticipation of litigation, mental impressions and the like. The mere fact of litigation or the report of anticipated litigation will not confer privileged status on a particular document.

As to the Cox subpoena, Defendants are entitled to conduct a review of

15

the documents produced by Cox before they are released to Plaintiffs only if at

the time of the business relationship between Scientific-Atlanta and Cox, there

was a confidentiality agreement in place.  Only if such a confidentiality

agreement was in place could Scientific-Atlanta have had any expectation that

the business that they conducted with Cox was in fact, confidential.  The Court

finds that if they conducted business outside of protections of a confidentiality

agreement then they could have no reasonable expectation that their business

information would remain confidential and Defendants would have waived any

otherwise applicable privilege.

### Conclusion

Defendants' Motion to Quash or Modify Subpoenas served on Ernst &

Young, LLP and Arthur Andersen, LLP or, in the alternative for Protective

Order [86-1] is **GRANTED in part and DENIED in part**.  Defendants'

Motion to Quash or Modify Subpoenas served on Scientific-Atlanta's

Customers or, in the alternative for Protective Order [98-1] is **GRANTED in**

**part and DENIED in part**. The Court finds that it has jurisdiction solely to

consider the objections to subpoenas issued from this Court including the Ernst

16

& Young subpoena and the Cox subpoena.  The Court finds that Defendants

have standing to raise objections as to these two subpoenas.  As to scope of the

time period permitted, the Court finds that discovery should be confined to

October 2, 1999 to June 30, 2002 for the Ernst & Young subpoena and  January

1, 2000 through December 31, 2001 for the Cox subpoena.  The Court

**DENIES** Defendants' objections as the subject-matter scope of the subpoena.

Defendants may review documents produced by Ernst & Young before

they are produced to Plaintiffs.  Defendants may have ten days from the date

they review the documents from Ernst & Young to conduct their review for

privileged documents.  Defendants should create a privilege log of any

documents for which they claim privilege.  Defendants may review documents

produced by Cox Communications before they are produced to Plaintiffs, but

only if they conducted business with Cox Communication under a signed

confidentiality agreement.  If so, Defendants may have ten days from the date

documents are received to review them for privilege.

**SO ORDERED** this   4th   day of January, 2005.

/s/ Richard W. Story
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

17



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

OFFICE OF THE
GENERAL COUNSEL

Stop 9612                                    September 21, 2006


U.S. mail and facsimile

Meryl W. Edelstein, Esq.
Chitwood Harley Harnes LLP
2300 Promenade II
1230 Peachtree Street N.E.
Atlanta, Georgia 30309


       Re:    *In re Scientific-Atlanta, Inc. Securities Litigation*, Case No. 1:01-CV-1950-RWS
            (N.D. Georgia)


Dear Ms. Edelstein:

      On August 8, 2006, the United States Securities and Exchange Commission received a subpoena seeking all documents (1) provided to the Commission in connection with the investigation that resulted in the civil action, *SEC v. Scientific-Atlanta, Inc.*, Case No. 06 Civ. 4823 (PKC) (S.D.N.Y.), by Scientific-Atlanta, Inc., Adelphia Communications Corp., or Arthur Andersen (the "investigation"); (2) reflecting any communications with persons currently or formerly employed by Scientific-Atlanta, Inc., Adelphia Communications Corp., or Arthur Andersen related to the investigation; (3) forming the basis of allegations in the complaint that resulted in the described civil action; (4) concerning any transcripts of testimony or interviews with former or current employees of Scientific-Atlanta, Inc.; (5) provided by Scientific-Atlanta, Inc. or Wallace G. Haislip in connection with an investigation underlying Administrative Proceeding No. 3-12339; (6) reflecting communications with persons now or formerly employed by or representing Scientific-Atlanta, Inc. or Mr. Haislip in connection with an investigation underlying Administrative Proceeding No. 3-12339; (7) provided by Scientific-Atlanta, Inc. or Mr. Julian W. Eidson in connection with an investigation underlying Administrative Proceeding No. 3-12340; and (8) reflecting communications with persons now or formerly employed by or representing Scientific-Atlanta, Inc. or Mr. Eidson in connection with an investigation underlying Administrative Proceeding No. 3-12340.

      In our telephone discussions regarding this subpoena, I informed you that neither Mr. Haislip nor Mr. Eidson had produced any records to the Commission. I also informed you that the Commission has an ongoing law enforcement proceeding to which the requested records

Meryl W. Edelstein, Esq.
September 21, 2006
Page 2

relate. Accordingly, release of information from the investigative file could reasonably be expected to interfere with this proceeding. Thus, pursuant to Rule 45(d)(2) of the Fed. R. of Civ. Proc., the Commission objected to producing the requested information subject to the law enforcement privilege. Subject to and without waiving this privilege or objection, the Commission believes that if production is limited solely to those documents in fact produced by Scientific-Atlanta, Inc., interference with the on-going aspects of this law enforcement proceeding could be avoided. You agreed that the records being sought at this time would be limited to those produced by Scientific-Atlanta, Inc. Records produced by Adelphia Communications Corp. would not be subject to production at this time.

As we also discussed, the General Counsel has the delegated authority to release non-privileged, non-public documents in response to a subpoena. *See* 17 CFR 200.30-14(f). To the extent that this or any subpoena seeks the production of documents or information protected by the attorney-client privilege, the deliberative process privilege, the attorney work product doctrine, the bank examination or financial institutions privilege, or any other applicable privilege and protection, the Commission objects to the subpoena. As you have excluded from production internal records drafted or prepared by Commission staff to which the Commission would assert its own privileges, objections on the basis of privilege will not be elaborated at this time.

In our conversations, you also extended the responsive date to accommodate the Commission's internal processes. Unfortunately, I was unable to respond by September 15, 2006, as we had agreed. Please accept my apologies for this failure.

Subject to and without waiving any objections or privileges, records produced by Scientific-Atlanta, Inc. have been located in the Commission's Northeast Regional Office. Pending resolution of a motion to quash which counsel for Scientific-Atlanta, Inc. stated would be filed, those records may be made available for inspection and copying. If there are any questions, please call me at 202-551-5158.

Sincerely,

Celia L. Jacoby
Senior Counsel

**Issued by the**
# UNITED STATES DISTRICT COURT

| MIDDLE | DISTRICT OF | PENNSYLVANIA |
|---|---|---|

IN RE SCIENTIFIC-ATLANTA, INC. SECURITIES LITIGATION

**SUBPOENA IN A CIVIL CASE**

Case Number: [101] Civ. 1950-RWS
(Pending in N.D. Ga.)

To: ADELPHIA COMMUNICATIONS CORP.
   1 North Main Street
   Coudersport, PA 16915

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (List documents or objects)

SEE ATTACHED SCHEDULE "A"

| PLACE | DATE AND TIME |
|---|---|
| Milberg Weiss Bershad & Schulman LLP, 5200 Town Center Circle, Suite 600, Boca Raton, FL 33486. You may mail documents to this address. Please contact Jill Meadow at (561) 361-5019 or jmeadow@milbergweiss.com to make these arrangements. | April 22, 2005 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which a person will testify. Federal Rules of Civil Procedure. 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| | 3-22-05 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

~~Maya Saxena~~ *Christopher S. Jones*
MILBERG WEISS BERSHAD & SCHULMAN LLP, 5200 Town Center Circle, Tower 1, Suite 600
Boca Raton, FL 33486; (561) 361-5000; Fax: (561) 367-8400

(See Rule 45. Federal Rules of Civil Procedure. Parts C & D on Reverse)

## PROOF OF SERVICE

| SERVED | | |
|---|---|---|
| | Date | Place |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on

_____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D

(c)     PROTECTION OF PERSONS SUBJECT TO SUBPOENAS

(1)  A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena.  The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)  A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)  Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production.  Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)  On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance;

(ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)  subjects a person to undue burden.

(B)  If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)     DUTIES IN RESPONDING TO SUBPOENA

(1)  A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)  When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## DEFINITIONS

1.    "And," "or" and "and/or" have both conjunctive and disjunctive meanings; "all" and "any" means each and every.

2.    "Concerning" means, directly or indirectly, referring to, relating to, connected with, commenting on, impinging or impacting upon, affecting, responding to, showing, describing, analyzing, reflecting or constituting.

3.    "Refer" or "relate" or "referring" or "relating" means all documents which comprise, explicitly or implicitly (*i.e.*, apparent from the context) refer to, were reviewed in conjunction with, or were created, generated or maintained as a result of the subject matter of the request, including, without limitation, all documents which reflect, record, memorialize, embody, discuss, evaluate, consider, review or report on the subject matter of the request.

4.    "Scientific-Atlanta", "SFA", or "the Company" means Scientific-Atlanta, Incorporated, any of its divisions, subdivisions, offices, subsidiaries, affiliates, predecessors, successors, joint ventures, parents, partners, present or former officers, directors, agents, representatives, employees (including, but not limited to, its attorneys, accountants, auditors and advisors), and all other persons or entities acting or purporting to act on its behalf.

5.    The term "Document(s)" is defined to be synonymous and equal in scope to usage of this term in Federal Rule of Civil Procedure 34(a), and is used in the broadest possible sense to mean, without limitation, any original written, printed, typed, photostated, photographed, recorded digitized or otherwise reproduced or stored communication or representation, whether comprised of letters, words, numbers, data, pictures, sounds or symbols, or any combination thereof. This definition includes copies or duplicates of Documents contemporaneously or subsequently created which have any non-conforming notes or other markings made on or

attached to such copy, or otherwise. Without limiting the generality of the foregoing, "Document(s)" includes, but is not limited to work papers, correspondence, memoranda, notes, drafts, records, letters, envelopes, telegrams, teletype or telecopy messages, analysis, contracts, agreements, working papers, summaries, statistical statements, accounts, financial statements or work papers, journals, ledgers, invoices, statements off account, checks, receipts, reports and/or summaries of investigations, tables, tabulations, trade letters, press releases, plans, schedules, comparisons, books, calendars, diaries, appointment books, timesheets, telephone logs and messages, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, drawings, pictures, diagrams, bills or invoices, instructions, resolutions, minutes or transcripts of meetings or of other communications of any type, including inter-officer and intra-office communications, electronic mail/messages, questionnaires, surveys, charts, graphs, photographs, phonograph recordings, films, tapes, diskettes, data cells print-out of information (translated, if necessary into usable form by you), including without limitation electronically sensitive storage media such as microfiche, microfilm, diskettes, computer disks, removable media and magnetic tapes, including any deleted files and any archived files, and any preliminary versions, drafts or revisions of the foregoing. "Document(s)" also includes the file, folder, tabs and labels appended to or containing any document.

6.      The terms "you" and "yours" shall mean Adelphia Communications Corp., its employees or its agents.

## INSTRUCTIONS

1.    The use of the singular shall be deemed to include the plural, and the use of one gender shall include all others, as appropriate in the context.

2.    You are required to produce all of the requested documents which are in your possession, custody or control, including (by way of illustration only and not limited to) documents in the possession, custody or control of your affiliates or merged and acquired predecessors and your present or former investigators, attorneys, directors, officers, partners, employees or other agents, as well as your present or form independent contractors over which you had control, and any other person acting on your behalf.

3.    If you withhold any information or document requested herein on grounds of privilege, work-product or otherwise, please provide the following information for each such document:

        (a)    the date thereof;

        (b)    the name, the present or last known home and business address and the telephone numbers thereto, the title (or position) and the occupation of each of those individuals who prepared, produced or reproduced, or who were recipients of said document;

        (c)    a description of the document sufficient to identify it without revealing the information for which the privilege is claimed; and

        (d)    each and every fact or basis upon which you claim any such privilege.

Notwithstanding the assertion of an objection, any purportedly privileged document containing non-privileged matter must be disclosed, with the purportedly privileged portion excised.

- 3 -

4.    If any otherwise responsive document was, but is no longer in existence or in your possession, custody or control, identify its current or last known custodian, the location/address of such document, and describe in full the circumstances surrounding its disposition from your possession or control.

5.    Documents produced pursuant to this request shall be produced as kept in the regular course of business as provided by the Fed.R.Civ.P. If a document was prepared in several copies, or if additional copies were thereafter made, and if any such copies were not identical or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including, without limitation, notations on the front or back of the document, all such non-identical copies must be produced.

## RELEVANT TIME PERIOD

Unless otherwise indicated, this discovery request seeks documents and information concerning the time period January 1, 2000 through December 31, 2001.

## DOCUMENTS REQUESTED

6.    All documents or correspondence comprising or reflecting contracts and side agreements between you and SFA.

7.    All documents, memoranda or correspondence reflecting or discussing an increase or decrease of your sales during the Relevant Period.

8.    All documents or correspondence reflecting your cancellation(s) of orders with SFA.

9.    All documents or correspondence reflecting or relating to equipment you purchased from SFA which was held onto by SFA at SFA's request.

- 4 -

10.    All documents reflecting payment and credit terms for product(s) you purchased from SFA.

11.    All documents or correspondence reflecting or relating to warehousing credits for the storage of product you purchased from SFA.

12.    All documents or correspondence provided to you by SFA that reflect or relate to SFA's return policy.

13.    All documents, correspondence or memoranda reflecting problems you experienced with set-top boxes purchased from SFA.

14.    All correspondence received by you from SFA in response to any written or verbal complaints concerning problems you experienced with set-top boxes purchased from SFA.

15.    Copies of invoices for products you purchased but never physically received from SFA.

16.    Copies of correspondence, memoranda or handwritten notes concerning requests made by SFA to you to purchase or accept product from SFA before you actually needed it.

17.    Copies of any sales forecasts you provided to SFA detailing your current or potential need for product.

18.    All documents reflecting communications between you and SFA during the Relevant Period not responsive to the other requests for documents herein that concern or relate to incentives you received from SFA to purchase its product.

FILED IN CHAMBERS
RICHARD W. STORY
U.S.D.C. Atlanta

RECEIVED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JAN 2 0 2005

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

JAN 2 5 2005

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| IN RE SCIENTIFIC-ATLANTA, INC.<br>SECURITIES LITIGATION | CIVIL ACTION FILE<br>NO. 1:01-CV-1950-RWS |

## STIPULATED ORDER REGARDING CONFIDENTIAL INFORMATION

WHEREAS, certain information of the parties and non-parties subject to discovery in this action may contain proprietary data, trade secrets or other confidential information, and

WHEREAS, the parties have reached an agreement as to the entry of an order protecting the confidentiality of that data or information;

IT IS HEREBY ORDERED AS FOLLOWS:

1.    As used herein, "Confidential Information" means any type or classification of documents, information, or materials that is designated as "Confidential" by the producing party by stamping the relevant page or as otherwise set forth herein.  A party may designate as "Confidential" any non-public documents or information which that party considers in good faith to contain (a) trade secrets or sensitive, proprietary commercial or financial information or (b)

1

information otherwise entitled to protection under the Federal Rules of Civil Procedure or other applicable law. Confidential Information may be contained in documents produced, testimony taken in depositions or at hearings, interrogatory answers, responses to requests for admission, or otherwise. Nothing in this Order shall prevent any party from challenging the designation of any documents or information as "Confidential."

2.      Documents or responses to interrogatories or requests for admission shall be designated as containing Confidential Information by marking or stamping each page as "Confidential." Designation of deposition testimony as "Confidential" may be made by so indicating on the record at the deposition or by notifying all parties, in writing, within thirty days of receipt of the transcript for such deposition. If a "Confidential" designation is made, the court reporter shall be directed to place the appropriate legend on the cover of the transcript and on all portions of the transcript designated as "Confidential." All deposition transcripts shall be treated as containing Confidential Information for a period of thirty days after receipt of the transcript. Counsel may challenge the Confidential designation of any information in a deposition transcript in the manner provided in Paragraph 19 of this Order.

3.      If testimony during a deposition is designated on the record as being "Confidential" by a party or counsel for a party, pursuant to this Order, no one shall

2

be present for that portion of the deposition testimony containing Confidential

Information except the deponent, counsel representing the parties and the deponent,

the court reporter and/or videographer, and any other persons otherwise permitted

access to such material pursuant to Paragraph 9 of this Order.

4.      Any non-party from whom discovery is sought may be informed of

and may obtain the protection of this Order by sending written notice to counsel for

the parties or by invoking this Order on the record during any deposition or similar

proceeding.

5.      The designation of any information as "Confidential" shall not

constitute an admission or adjudication that such material in fact constitutes or

contains any trade secrets or is otherwise private, confidential or proprietary

information warranting protection.

6.      In the event that any party to this action produces files and records as

maintained in the regular course of business and the inspecting party desires to

inspect them first before any copies are made, no "Confidential" designation need

be made by the parties in advance of said inspection.  For purposes of the

inspection, all material produced shall be considered as having been designated

"Confidential."  Thereafter, upon selection of specified documents by the inspecting

3

party for copying, the producing party shall mark as "Confidential" the specific copies it wishes to so designate.

7.    All information produced by any party to an opposing party prior to the entry of this Order that is designated as "Confidential" is subject to the terms and conditions of the Order.

8.    Confidential Information and any summaries, copies, abstracts, or other documents derived in whole or in part from materials designated as "Confidential" shall be used only for the purpose of preparing for and conducting pretrial, trial, and appellate proceedings in this action, and shall not be communicated in any manner, directly or indirectly, to anyone other than a person qualified to have access to such materials pursuant to Paragraph 9 of this Order.

9.    Under this Order, Confidential Information may be disclosed only to the following persons (referred to collectively herein as the "qualified persons"):

a.    The attorneys for the parties in this action, including in-house counsel and their legal, paralegal, and clerical employees;

b.    The Court and its staff and supporting personnel including, but not limited to, court reporters, clerks, stenographic reporters, and videographers (both for purposes of depositions and at trial);

4

c.    Any person called as a witness at a deposition or other

proceeding in this action;

d.    Any other person whom a party in good faith determines may be

a potential witness in the litigation;

e.    Any experts or consultants and their employees and clerical

assistants retained or consulted by counsel for a party in connection with the

prosecution, defense, or settlement of this action, including but not limited to a

mediator selected by the parties and his or her staff;

f.    Any party or a present or former officer, director, employee, or

partner of a party deemed necessary by counsel to aid in the prosecution, defense,

or settlement of this matter;

g.    The attorneys for any non-parties who may produce documents

or testify in this action by either agreement, subpoena, or an order of the Court and

their legal, paralegal, and clerical employees; and

h.    Any person whom counsel for the parties agree should have

access to such materials and who agrees to be bound by the terms of this Order.

10.    Before any Confidential Information is disclosed to any person under

Paragraphs 9(c) or (d) of this Order (but not including any party or a present or

former officer, director, employee, or partner of a party) and Paragraphs 9(e) and

5

(g) of this Order, each such person will execute a copy of the form attached hereto as Exhibit A (the "Nondisclosure Agreement") provided, however, that if a non-party witness, an expert, or a consultant is to be shown Confidential Information for the first time at a deposition or hearing, the requirements of this paragraph will be satisfied if that non-party witness, expert, or consultant first declares under oath and on the record that he or she has received a copy of the Order and agrees to be bound by its provisions. Executed Nondisclosure Agreements shall be retained by the party disclosing Confidential Information to such person.

11. Each qualified person as described in Paragraph 9 to whom Confidential Information is to be furnished, shown or disclosed will use that information solely for the purposes of this litigation and will not communicate such information, directly or indirectly, to any other person.

12. This Order shall not apply to any document, testimony or other information that (i) is already in a non-producing party's possession, or (ii) is or becomes generally available to the public other than as a result of disclosure in violation of this Order.

13. At such time as it is necessary to file a document containing Confidential Information with the Court (such as exhibits in support of a motion) or a pleading that references or discusses Confidential Information, a party shall file a

6

"hard copy" of such document or pleading under seal with the Clerk of the Court.[1]

When any document or pleading is filed under seal pursuant to this paragraph, it

shall be filed in an envelope labeled "Confidential – Subject to Stipulated Order

Regarding Confidential Information" and shall also contain the following

statement:

> This envelope (or container) is not to be opened nor the contents thereof
> displayed or revealed except as provided for in the Stipulated Order
> Regarding Confidential Information dated _____, 2004, or by Court
> Order, or by the agreement of the parties to this case.

The party whose Confidential Information is attached to or discussed in a pleading

should make a good faith effort to file a redacted version of the document or

pleading to be made available publicly within twenty-one (21) days of its filing

under seal, to the extent practically possible.  That party shall be guided by a rule of

reason in determining whether a portion of the document or pleading may be made

available for public filing or whether the document or pleading should be filed only

under seal.  The Court does not intend to create an undue burden on the parties, but

rather intends to underscore the policy of open access to the Courts.

---

[1]    The parties understand that the electronic filing requirements for the Northern District of Georgia that are
scheduled to take effect as of July 2005 are not intended to alter the ability of parties to file documents under seal.

ATL01/11787520v1

14.    This Order was agreed to by the parties, among other reasons, for the purpose of facilitating the exchange of documents and information in such a manner as to limit the need to seek the Court's involvement in that process.  The parties also contemplate that they will be exchanging significant quantities of documents over the course of the litigation and wish to adopt procedures to expedite this process. For these reasons, the parties have agreed that the production of Confidential Information without the appropriate designation will not be deemed a waiver in whole or in part of a party's prior or subsequent claim of confidentiality.  Upon notice that Confidential Information has been produced without the appropriate stamp or legend, the producing party may designate the materials as "Confidential" and produce corrected copies which bear the required stamp or legend.  Disclosure of such information by any other party prior to such later designation is not a violation of this Order.

15.    Disclosure of any document or information covered by this Order to anyone pursuant to subpoena or administrative order other than the persons identified in Paragraph 9 of this Order shall be made only after giving the party producing the Confidential Information written notice of the intent to disclose and after that party has had an opportunity within ten Court days after receipt of such notice to seek additional protection from the Court; provided, however, that if the

8

return date of any such subpoena or administrative order is less than ten working days from the date the subpoena or administrative order was received, written notice of the intent to disclose shall be given to the party providing the Confidential Information by facsimile and telephone to their counsel within 48 hours after receipt. If the party providing the Confidential Information timely moves for additional protection with respect to such document or information, the document or information shall not be disclosed until after this Court or another court of competent jurisdiction rules on the request for additional protection.

16.    The failure of any party to object to the designation of information as Confidential Information does not prevent the party from later objecting to this designation and requesting that the party be permitted to disclose the information without regard to the terms of this Order.

17.    This Order applies to all proceedings in this action other than trial. Confidentiality rules covering the trial of this action that can be agreed upon by the parties will be set forth in a consolidated pretrial order to be drafted by the parties and submitted to the Court.

18.    Nothing herein shall be construed to be an admission of relevance or to affect, in any way, the admissibility of documents, testimony or other evidence in this action.

9

19.    If a party objects to a confidentiality designation, the parties should first attempt in good faith to resolve the dispute.  If the parties are unable to resolve the dispute, the party objecting to the confidentiality designation should file a motion with the Court, at which time the Court will take the objection under consideration.  Nothing contained herein is intended to shift the burden of either party regarding an objection to a confidentiality designation that exists under applicable law.

20.    This Order shall survive any settlement, judgment or other disposition or the conclusion of this action and all appeals therefrom, and this Court shall retain continuing jurisdiction in order to enforce the terms of this Order.  After the final termination of this action, whether by final judgment or settlement, including the expiration of any time for appeal, all "Confidential Information" produced in this litigation which is in the possession, custody, or control of any non-producing party or its attorneys shall either be destroyed, with a letter confirming destruction served on the producing party, or shall be returned to the producing party, except as this Court may otherwise order or as the parties may otherwise agree.  However, subject to the terms of this Order, the parties and their counsel may retain copies of briefs and other papers that contain or constitute such Confidential Information, including correspondence, deposition transcripts, trial exhibits and the attorney's work

10

product (excluding copies of any attached materials that have been designated as Confidential Information). Any such briefs and other papers shall continue to be treated pursuant to the terms of this Order.

21. This Order has no effect upon, and its scope shall not extend to, any party's use of its own Confidential Information.

22. Nothing in this Order shall prevent the parties from agreeing to amend this Order, nor shall it prevent any party from moving for an amendment to this Order either during or after the conclusion of this action, nor shall it prejudice in any way the rights of a party to apply to the Court for any additional protection with respect to the confidentiality of documents or information that the party may consider appropriate.

23. Nothing in this Order shall prevent a party or non-party who has designated material as Confidential Information from agreeing to release any of the Confidential Information from the requirements of this Order.

SO ORDERED, this *24th* day of *January*, 2004.

_____
HONORABLE RICHARD W. STORY
United States District Court

11

CONSENTED TO:

**CHITWOOD & HARLEY**

Craig Harley with express permission
by Kelly Wilson
Martin D. Chitwood
Ga. Bar No. 124950
Craig G. Harley
Ga. Bar No. 326813
David A. Bain
Ga. Bar No.032449
2300 Promenade II
1230 Peachtree Street, NE
Atlanta, Georgia 30309
Tel: (404) 873-3900
Fax: (404) 876-4476

**KELLER ROHRBACK, L.L.P.**
Lynn L. Sarko
Juli Farris Desper
Elizabeth A. Leland
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1900

**Co-Lead Counsel for Plaintiffs**

12

**ALSTON & BIRD LLP**

Oscar N. Persons
Ga. Bar No. 573500
Susan E. Hurd
Ga. Bar No. 379628
Kelly C. Wilcove
Ga. Bar No. 185682
1201 West Peachtree Street
One Atlantic Center
Atlanta, GA 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777

**Counsel for Defendants**

ATL01/11787520v1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____   )
                                    )
IN RE SCIENTIFIC-ATLANTA, INC.      )   CASE NO:
SECURITIES LITIGATION               )   1:06MS00435
_____   )
                                    )

## [PROPOSED] ORDER

Having considered the arguments and briefs submitted by the parties, the

Court hereby **DENIES** Defendants' Motion to Quash or Modify Subpoena Served

on the Securities and Exchange Commission Or, in the Alternative, for Protective

Order.


**SO ORDERED** this _____ day of _____, 2006


_____
The Honorable Ellen Segal Huvelle
United States District Court Judge