UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| IN RE SCIENTIFIC-ATLANTA, INC. | ) | Civil Action File |
| SECURITIES LITIGATION | ) | No. 1:06-MC-00435 |
| | ) | |

## REPLY IN SUPPORT OF MOTION TO QUASH OR MODIFY SUBPOENA SERVED ON THE SECURITIES AND EXCHANGE COMMISSION OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

## I.    INTRODUCTION[1]

Plaintiffs suggest that the requested discovery is not the "proverbial 'fishing expedition' that the [Reform Act] was trying to prevent." (Pls.' Mem. at 13.)  We disagree.  Plaintiffs in the Georgia case do not dispute that they have no claims regarding S-A's marketing support agreement with Adelphia.  There is, in fact, only one set of cases -- the Adelphia MDL -- where S-A faces putative claims based on the agreement.  S-A has moved to dismiss those claims, triggering the Reform Act's discovery stay.

Plaintiffs now seek discovery on these MDL claims in violation of that stay.  Understanding that the stay would prohibit them from seeking documents in the MDL, Plaintiffs instead subpoenaed the SEC, which they know from S-A's public disclosures also conducted an investigation into the

---

[1]    Abbreviations and defined terms in the Memorandum in Support of the Motion to Quash are also utilized here.

marketing support agreement.  This Court should not countenance Plaintiffs'
attempt to perform an end-run around the MDL discovery stay.

As set forth below, the fact that Plaintiffs chose as their vehicle a case
pending outside the MDL is irrelevant.  The Reform Act by its express terms
provides for a blanket stay of "all discovery . . . during the pendency of any
motion to dismiss . . . ."  15 U.S.C. § 78u-4(b)(3)(B) (emphasis added).  If
discovery requests in other cases were exempt as Plaintiffs suggest, the stay
would be routinely undercut in ways that Congress never intended and
clearly sought to prevent with the passage of SLUSA.

Plaintiffs to date have received over 800,000 pages of documents
from S-A that are responsive to the claims they have in the Georgia case
(including documents on Adelphia), and that production is ongoing.  The
requested fishing expedition into the subject matter of claims brought by
other securities plaintiffs should be denied as those claims have not yet
passed muster under the Act.  Accordingly, Defendants respectfully request
that this Court grant their Motion to Quash.

## II.    ARGUMENT AND ANALYSIS

### A.    S-A Has Standing To Oppose The Production Of Its Own Documents.

Plaintiffs' suggestion that S-A lacks standing for this Motion is
wrong.  Even Plaintiffs acknowledge that a party has standing to challenge a

third-party subpoena when that party asserts a personal right or privilege regarding the documents at issue. (Pls.' Mem. at 3); see also Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588, 591 (D. Kan. 2003). Under this standard, standing exists where, as is the case here, the third-party is in possession of a party's confidential information, the production of which would be called for under the subpoena. See, e.g., Sierra Rutile, Ltd v. Katz, No. 90 Civ. 4913 (JFK), 1994 WL 185751, at *2 (S.D.N.Y. May 11, 1994).

S-A possesses a "personal right" with respect to the documents requested by Plaintiffs because they are S-A's documents. (See Defs.' Ex. B at 2.) S-A produced these internal documents pursuant to a confidentiality agreement it had with the SEC. (See id. at 1.)[2] These documents discuss sensitive business, financial, and other types of proprietary information, all of which Plaintiffs do not dispute. Standing exists under these circumstances. See, e.g., Transcor, 212 F.R.D. at 591 (recognizing defendant corporation's personal right in records subpoenaed from third-parties and granting defendant standing to object to subpoenas); New Park Entm't, L.L.C. v. Elec. Factory Concerts, Inc., No. Civ. A. 98-775, 2000 WL 62315, at *5 (E.D. Pa. Jan. 13, 2000) (defendants' confidentiality interest in

---

[2]    The SEC notifies parties "who had requested confidential treatment or otherwise sought to limit access" to their documents when the SEC receives a subpoena for the production of that party's documents. (See Defs.' Ex. B at 1.) This process was followed here, and S-A notified the SEC of its intention to object within the requested time period. (See id.)

subpoenaed documents gave them standing to challenge third-party

subpoenas); Sierra Rutile, 1994 WL 185751, at *2 (granting party standing

to object to third-party subpoenas where party had "a sufficient privacy

interest in the confidentiality of [the] records" subpoenaed).

  S-A had an expectation of privacy as to its confidential production to

the SEC, which the SEC respected.  Indeed, the SEC apparently believes that

S-A has standing to speak on the production of these documents to outside

parties (like Plaintiffs) as the SEC voluntarily deferred production until such

time as S-A's objections could be ruled upon by this Court.  (See Defs.' Ex.

B at 2.)[3]

  Indeed, it is surprising that Plaintiffs have taken the position that S-A

lacks standing to challenge a third-party subpoena that requests copies of S-

A's documents.  That issue has already been litigated in this case and

resolved in S-A's favor.  The parties made the same arguments on standing

in front of Judge Story in the Georgia case.  (See Pls.' Ex. B at 7-11.)[4]

---

[3]  The fact that there is a confidentiality order in this case does not resolve the present Motion.  (See Pls.' Mem. at 13.)  S-A does not oppose the document production at issue because the documents are confidential.  Rather, it is the confidential nature of the requested documents that gives S-A a right to be heard on their possible production, and this right is not limited to the confidentiality issue as other courts have held.  See, e.g., Transcor, 212 F.R.D. at 591; Sierra Rutile Ltd., 1994 WL 185751, at *2.

[4]  A copy (without exhibits) of Defendants' reply brief in support of their motion to quash third-party subpoenas to S-A's customers is attached at Exhibit A.  Defendants argued successfully that they had an undisputed interest in the S-A documents in the

As to subpoenas served on S-A's outside auditors and customers (including Adelphia), Judge Story held that "Defendants have stated a sufficient personal interest in the information that Plaintiffs requested to confer standing for them to challenge the subpoenas." (Id. at 10.)[5] The court found that the text of Rule 45 explicitly supports standing for interested and potentially affected parties like S-A. (See id.) It allows a court to modify or quash a third-party subpoena "to protect a person subject to or affected by the subpoena . . . ." (Id. (citing Rule 45(c)(3)(B)(I)) (emphasis added).)

## B.    S-A Has Standing To Object Under The Reform Act.

The Reform Act also confers on S-A a separate right to challenge Plaintiffs' subpoena. As discussed previously, courts universally recognize that a moving defendant may invoke the Reform Act stay as to third-party discovery. See Defs.' Mem. at 6-7; see also Powers v. Eichen, 961 F. Supp. 233, 235 (S.D. Cal. 1997) (recognizing that Reform Act, by its express language, "addresses 'all discovery' with no distinction between that sought

---

hands of third-parties that fell within the "personal right" rubric and gave them standing to object to the requested document production. (See Ex. A at 5-8.) Judge Story agreed.
[5]    Judge Story also ruled that, despite S-A's standing to object, any objections on third-party subpoenas would have to be made in the district where the subpoenaed party was located. (See Pls.' Ex. B at 4-7.) Judge Story held, for example, that he was without jurisdiction to rule on Defendants' substantive objections to Plaintiffs' subpoena to Adelphia. (See id.) Here, unlike that situation, S-A filed its motion to quash in the district where the subpoenaed office of the SEC is located and, therefore, these jurisdictional issues do not exist.

from nonparties as opposed to parties"). The Act, thus, provides an independent basis for the present challenge in addition to the personal right concerns previously found to have conferred standing on S-A. See, e.g., In re Cree, Inc. Sec. Litig., 220 F.R.D. 443, 446 (M.D.N.C. 2004) (acknowledging that standing may be conferred through a "personal right or privilege," but holding that the Reform Act stay created standing for defendant to object to third-party subpoenas while motion to dismiss was pending).

### C. General Rule 26 Discovery Standards Do Not Control Where The Reform Act Stay Applies.

Plaintiffs contend that Rule 26 governs whether they should receive the requested documents. (See Pls.' Mem. at 3-4.) They rely on cases that stand for the proposition that "relevancy" under Rule 26 should be interpreted broadly. (Id.) Plaintiffs argue that these Rule 26 considerations trump the Reform Act's mandatory stay, entitling them to the requested documents. (See id.) This logic is flawed.

Plaintiffs ignore that, in situations (such as here) where the Reform Act stay is applicable, all discovery is stayed, regardless of whether the discovery would otherwise be allowed under Rule 26. See, e.g., In re Fannie Mae Sec. Litig., 362 F. Supp. 2d 37, 38 (D.D.C. 2005) (enforcing stay against request for documents from non-party); In re AOL Time

Warner, Inc. Sec. & ERISA Litig., 02 Civ. 8853, 2003 WL 22227945, at *1
(S.D.N.Y. Sept. 26, 2003) (enforcing Reform Act stay when party sought
discovery in a separate action also pending against AOL); see also In re
Smith Barney Transfer Agent Litig., No. 05 Civ. 7583 (WHP), 2006 WL
1738078, at *1 (S.D.N.Y. June 26, 2006).

Plaintiffs do not cite to any cases that contradict this well-established
principal. None of the cases Plaintiffs cite even address discovery in the
context of a securities fraud class action, much less one governed by the
Reform Act.[6] Because the Reform Act applies, Plaintiffs are not entitled to
any discovery (under Rule 26 or otherwise) unless they satisfy the only two
exceptions to the stay provided in the statute. See 15 U.S.C. § 78u-
4(b)(3)(B). Plaintiffs do not even attempt to argue that their subpoena
qualifies under these statutory exceptions.[7]

---

[6]     See Hickman v. Taylor, 329 U.S. 495 (1947) (wrongful death action); Degen v.
United States, 517 U.S. 820 (1996) (civil forfeiture proceeding); Burger King Corp. v.
Weaver, 169 F.3d 1310 (11th Cir. 1999) (action for breach of fast food restaurant
franchise agreements); In re Folding Carton Antitrust Litig., 76 F.R.D. 420 (N.D. Ill.
1977) (antitrust action); Quaker Chair Corp. v. Litton Bus. Sys., Inc., 71 F.R.D. 527
(S.D.N.Y. 1976) (patent infringement action); Beauchem v. Rockford Prods. Corp., No.
01-C-50134, 2002 WL 100405 (N.D. Ill. Jan. 24, 2002) (action for breach of fiduciary
duty); Stewart v. Mitchell Transp., No. Civ. A. 01-2546-JWL, 2002 WL 1558210 (D.
Kan. July 8, 2002) (personal injury action); B-S Steel of Kan., Inc. v. Tex. Indus., Inc.,
No. 01-2410-JAR, 2003 WL 21939019 (D. Kan. July 22, 2003) (antitrust action).
[7]     The stay may be lifted where it is necessary: (1) to preserve evidence or (2) to
prevent undue prejudice to the propounding party. See 15 U.S.C. § 78u-4(b)(3)(B).
Given that a stay of discovery unquestionably exists here, Plaintiffs' only recourse was to
attempt to meet their burden to show that at least one of the two exceptions applied.
They have failed to do so.

Instead, Plaintiffs invite this Court to create a new exception to the stay for "relevant" discovery. Congress was, however, well-aware of the general rules of discovery when it passed the Act. Despite the general preference for "open and robust discovery," Congress nevertheless determined that all discovery should be stayed in securities cases based on abuses found to exist in such cases under the existing rules, including Rule 26. (See Defs.' Mem. at 5-6.) The decision on whether the stay applies, thus, does not involve an inquiry into the merits of the discovery sought. Rather, the stay applies automatically if a motion to dismiss is pending, even if the discovery would be highly relevant to the propounding party's claims.

Plaintiffs accuse Defendants of delay and obstruction, yet such complaints are particularly misplaced in the context of the Reform Act. A party's frustration with the delay expressly contemplated by Congress in passing the Reform Act provides no basis to lift the stay. See, e.g., Fisher v. Kansas, No. 06-CV-1187 (ADS), 2006 WL 2239038, at *3 (E.D.N.Y. Aug. 4, 2006) ("[D]elay in and of itself is not sufficient to establish undue prejudice [for purposes of lifting the stay], as delay is simply a part of the process in a [Reform Act] case.").

**D.**    **Plaintiffs Have No Claims Based On The Marketing Support Agreement.**

Plaintiffs also assert that "[t]he discovery at issue here is clearly permissible, because Plaintiffs' Complaint contains allegations that are substantively identical to the allegations in the SEC complaint . . . ." (Pls.' Mem. at 6.) As shown above, even if Plaintiffs' claims were similar to the SEC's allegations (which Plaintiffs have not shown), they would not be entitled to proceed with the requested discovery. The question here is whether the requested discovery encroaches on the subject matter of the motions to dismiss pending in the Adelphia MDL. This is undisputedly the case, which Plaintiffs do not deny.

In any event, Plaintiffs' argument that their claims track those of the SEC is inaccurate. Plaintiffs can cite to no portion of their Complaint where they discuss the marketing support agreement with Adelphia. The best Plaintiffs can muster are citations where they allege S-A "stuffed the channels" with Adelphia. (See Pls.' Mem. at 2.) In other words, Plaintiffs contend that S-A "pulled" into the present quarter additional sales for Adelphia that would have otherwise occurred in future quarters. (See id. at 6 (citing Compl. ¶ 120); see also id. at 7 (citing Compl. ¶ 199).) Plaintiffs also allege that S-A utilized "side letters" and thereby failed to recognize revenue properly for product sales. (See id. at 7 (citing Compl. ¶ 139).)

The SEC Complaint, in contrast, focuses on S-A's alleged role in providing aid or assistance to Adelphia in its improper reporting of Adelphia's financial information.  The SEC Complaint does not purport to address S-A's revenue recognition practices or the adequacy of S-A's publicly disclosed financial information.  Moreover, the portions of the SEC Complaint cited by Plaintiffs contend that Adelphia was contractually obligated to buy 350,000 set-tops from S-A per quarter in 2001, but S-A was only able to convince Adelphia to take 240,000 set-tops in the fourth quarter of fiscal year 2001.  (Id. at 7-8 (citing SEC Compl. ¶¶ 17, 19).)  Thus, according to the SEC, Adelphia took less, not more, than what they had previously agreed to accept.  This is inconsistent with Plaintiffs' theory that S-A pulled in orders from future quarters to present an allegedly false appearance of increasing demand.  (See Compl. ¶¶ 120, 199 (discussing the alleged use of "'special terms' to pull sales and bookings into the third quarter of 2001" and alleged directives from S-A employees "to pull sales in early").)

Plaintiffs are, thus, entirely correct when they state that the issue of what discovery should take place as to the marketing support issue "was simply not addressed at all in the motion to compel briefing" in the Georgia case.  (Pls.' Mem. at 9.)  That is so because, inter alia, Plaintiffs have no

- 10 -

claims based on the marketing support agreement, and such claims, if possible, are being prosecuted by other plaintiffs in a different jurisdiction where the stay prevents any discovery.

### E.    Discovery Requests In Other Cases Cannot Be Used As An End-Run Around The Reform Act.

Plaintiffs claim Defendants "provide no support" for the proposition that, when a motion to dismiss is filed, the Act stays discovery <u>on the underlying claims</u> both in the case where the motion is pending, and also in other cases involving the same defendant. (Pls.' Mem. at 10.) Plaintiffs are incorrect.

As explained previously, courts refuse to allow parties to circumvent the Act by requesting discovery in another case <u>on the same issues</u> involved in the stayed case. (<u>See</u> Defs.' Mem. at 9-10 (collecting cases).) Indeed, the reason Congress passed SLUSA was for the express purpose of clarifying that there was no "separate case" loophole in the discovery stay provision. (<u>Id.</u>) Congress was troubled by the post-Reform Act trend of parties seeking discovery from defendants in separate state court proceedings on the same issues that were the subject of their pending motions to dismiss in federal court. (<u>Id.</u>)[8]

---

[8]    Plaintiffs argue that, because of the confidentiality order in this case, any documents they receive cannot be used by the plaintiffs in the Adelphia MDL and so they

Plaintiffs erroneously suggest that such considerations apply only

"where the securities claims and other claims are in the same procedural

posture and the court coordinates discovery . . . ." (Pls.' Mem. at 12.)

Plaintiffs do not, however, cite a single case for this point. They cannot

because an end-run around a court-ordered stay is an impermissible end-run,

no matter when it is attempted. See Dushkin Publ'g Group, Inc. v. Kinko's

Serv. Corp., 136 F.R.D. 334 (D.D.C. 1991) (court refused to allow party to

circumvent another court's order against discovery); Donovan v.

Lewnowski, 221 F.R.D. 587 (S.D. Fla. 2004) (same).[9]  In passing SLUSA,

Congress clearly recognized the need for the stay to apply in cases that were

not procedurally identical or proceeding in tandem and were, in fact, being

prosecuted by different plaintiffs.  The common defendant and the common

---

contend there is no need for a stay. (See Pls.' Mem. at 13.) The Reform Act, however,
provides for a blanket stay. There is no exception for confidentiality orders. Moreover,
one of the reasons why Congress passed the Reform Act was to protect defendants, like
S-A, from any discovery on putative securities claims before they had been tested under
the pleading standards of the Reform Act. S-A should not, therefore, be put to the burden
and expense of discovery on the marketing support issue until its motions have been
decided, regardless of whether that discovery could be used by or would even be helpful
to those opposing S-A's motions to dismiss.
[9]        Plaintiffs claim Dushkin and Donovan do not apply because they are not Reform
Act cases. (Pls.' Mem. at 11-12.) That is irrelevant. Both Dushkin and Donovan
demonstrate that when a court enters an order forbidding discovery -- whether it is based
on a Reform Act stay or not -- other courts respect that order out of comity and
efficiency. See Dushkin, 136 F.R.D. at 334; Donovan, 221 F.R.D. at 587. Here, there is
both a specific order from the Southern District of New York staying discovery on the
issues sought in the subpoena and a Reform Act stay (because of the pending Adelphia
MDL motions to dismiss). (See Defs.' Mem. at 2-3.)

subject matter between the discovery and the motion to dismiss -- which we have here -- were the focal point of Congressional concern.

In re AOL Time Warner, Inc. Securities & ERISA Litigation, 02 Civ. 8853, 2003 WL 22227945 (S.D.N.Y. Sept. 26, 2003), cited by Defendants, is instructive.  There, the court held that discovery in a separate ERISA case should be stayed in favor of a pending securities fraud class action that presented the same issues.[10]  In response, Plaintiffs cite to:  In re FirstEnergy S'holder Derivative Litig., 219 F.R.D. 584, 586 (N.D. Ohio 2004); Tobias Holdings, Inc. v. Bank United Corp., 177 F. Supp. 2d 162, 168-69 (S.D.N.Y. 2001); and In re Cisco Sys., Inc., No. C 01-20418JW, 2002 WL 32987531 (N.D. Cal. Jan. 30, 2002).  Yet, the court in these cases did not face the same issues presently before this Court.

Unlike here and in AOL, none of Plaintiffs' cases involved parties seeking discovery on federal claims, much less federal securities fraud claims.  Instead, in all these cases, the parties were seeking discovery for state law, non-securities class action claims.  See FirstEnergy, 219 F.R.D. at

---

[10]    Plaintiffs wrongly seek to distinguish AOL by claiming that the court's decision to stay discovery in the ERISA case was "premised" on the fact that the parties seeking discovery in the ERISA case were represented by the same counsel as the parties in the securities case. (Pls.' Mem. at 12.) Yet the AOL Court rejected the discovery simply because it "best comport[ed] with the purposes of the [Reform Act]." AOL, 2003 WL 22227945, at *3.  That the parties in both cases had the same counsel was not relevant to that holding.  The Court mentioned it solely as one (of many) reasons the discovery-seeking party's erection of an ethical wall between the cases was not a feasible alternative to a bar of discovery under the Reform Act stay. Id. at *2.

586 (noting that party seeking discovery "d[id] not make any federal securities law claims."); <u>Tobias Holdings</u>, 177 F. Supp. 2d at 168-69 (allowing discovery for non-securities state law claims); <u>Cisco</u>, 2002 WL 32987531, at *3 (allowing non-securities state law claims to go forward).

Further, in both <u>Cisco</u> and <u>Tobias Holdings</u>, plaintiffs merely requested that the same court that issued a Reform Act stay not expand the stay's scope, and the courts granted those requests. <u>Cisco</u>, 2002 WL 32987531, at *3; <u>Tobias Holdings</u>, 177 F. Supp. 2d at 164-66. Here, Plaintiffs request something entirely different: to have this Court issue an order in conflict with another federal court's order staying discovery. It is true that the courts in <u>FirstEnergy</u>, <u>Cisco</u>, and <u>Tobias Holdings</u> declined to extend the Reform Act stay. However, those decisions did not put the courts in conflict with the express order of another district court (which would be the case here). Further, those decisions did not risk interfering with another court's ability to manage and coordinate discovery for multiple claims and participants as part of Multi-District Litigation (which would also be the case here). Compare <u>Dushkin</u>, 136 F.R.D. 334 (court refused to allow party to circumvent another court's order against discovery); <u>Donovan</u>, 221 F.R.D. 587 (same).

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that their

Motion be granted, and that this Court order that the requested production

from the SEC will not occur.

Respectfully submitted, this 27th day of October, 2006.

Robert N. Driscoll
D.C. Bar No. 486451

ALSTON & BIRD LLP
950 F Street NW
Washington, DC 20004-1404
Tel.:  (202) 756-3300
Fax:  (202) 756-3333

Oscar N. Persons
Georgia Bar No. 573500
Susan E. Hurd
Georgia Bar No. 379628
Kelly C. Wilcove
Georgia Bar No. 185682

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel.:  (404) 881-7000
Fax:  (404) 881-7777

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE SCIENTIFIC-ATLANTA, INC.          )     Civil Action File
SECURITIES LITIGATION                  )     No. 1:06-MC-00435

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the within and foregoing **REPLY IN SUPPORT OF MOTION TO QUASH OR MODIFY SUBPOENA SERVED ON THE SECURITIES AND EXCHANGE COMMISSION OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER** by depositing same in the United States Mail addressed as follows:

Meryl W. Edelstein
Chitwood Harley Harnes LLP
2300 Promenade II
1230 Peachtree Street NE
Atlanta, GA 30309

Juli Farris
Keller Rohrback LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Celia L. Jacoby
U. S. Securities and Exchange Commission
Office of the General Counsel
100 F Street NE
Washington, DC 20549

This 27th day of October, 2006.

_____
Robert N. Driscoll
D.C. Bar No. 486451

ALSTON & BIRD LLP
950 F Street NW
Washington, DC 20004-1404
Tel.:  (202) 756-3300
Fax:  (202) 756-3333

Oscar N. Persons
Georgia Bar No. 573500
Susan E. Hurd
Georgia Bar No. 379628
Kelly C. Wilcove
Georgia Bar No. 185682

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel.:  (404) 881-7000
Fax:  (404) 881-7777

*Counsel for Defendants*

# EXHIBIT A

FILED IN CLERK'S OFFICE
U.S.D.C.-Atlanta

FEB 1 0 2005

LUTHER D. THOMAS, Clerk
By: ꞮꞮꞮꞮꞮꞮꞮꞮ
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| _____ )<br>IN RE SCIENTIFIC-ATLANTA, INC. )<br>SECURITIES LITIGATION )<br>_____ ) | CIVIL ACTION FILE<br>NO. 1:01-CV-1950-RWS |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO QUASH OR MODIFY SUBPOENAS SERVED ON SCIENTIFIC-ATLANTA'S CUSTOMERS OR, IN THE ALTERNATIVE, FOR PROTECTIVE ORDER

Oscar N. Persons
Georgia Bar No. 573500
Susan E. Hurd
Georgia Bar No. 379628
Kelly C. Wilcove
Georgia Bar No. 185682
Irene E. Baker
Georgia Bar No. 033663

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424
(404) 881-7000

Counsel for Defendants

Pursuant to Fed. R. Civ. P. 26 and 45, Defendants moved to quash or modify the subpoenas served on S-A's Customers or, in the alternative, for a protective order restricting the production of documents from these Customers in a manner consistent with Defendants' objections. Defendants now make their Reply in further support of this Motion.

## I.    ARGUMENT AND ANALYSIS

### A.    <u>This Court Has Jurisdiction To Grant The Requested Relief.</u>

#### 1.    *Plaintiffs' Hypertechnical Reading of Rule 45 Fails.*

Plaintiffs argue that this Court lacks jurisdiction to resolve the present dispute because it is not the "issuing court" for eight of the nine subpoenas. (<u>See</u> Pls.' Opp'n at 4-6.) The cases cited by Plaintiffs, however, involve a different situation -- <u>i.e.</u>, where third-parties, as opposed to parties, sought relief from compliance with an objectionable subpoena. <u>See, e.g.</u>, <u>In re Sealed Case</u>, 141 F.3d 337, 339 (D.C. Cir. 1998) (involving third-party's motion to quash filed in issuing court and subsequently transferred to trial court). Here, Defendants -- existing parties to this action who are subject to this Court's jurisdiction -- ask this Court to enforce the proper scope of discovery against Plaintiffs -- who are already parties in the case.[1] Thus, Plaintiffs' reliance on cases that discuss the appropriate jurisdiction for a third-party's challenge to a subpoena is misplaced.

---

[1]  Plaintiffs argue that, if this Court were to grant the relief Defendants seek, it would be usurping the issuing court's authority to rule on Rule 45 motions to quash. (<u>See</u> Pls.' Opp'n at 5-6.) However, if Defendants' Motion was granted, the third–parties would still be able to seek any further relief they

Moreover, Plaintiffs agree that, even under their unduly restrictive interpretation of Rule 45, this Court has jurisdiction to consider objections to the subpoena served on Cox Communications. (See Pls.' Opp'n at 5 n.2.) Plaintiffs, thus, acknowledge that this Court will necessarily have to consider the issues raised by Defendants regarding that subpoena. Considerations of judicial economy and a desire for uniform rulings on the scope of these identical subpoenas counsel in favor of this Court deciding all of these issues -- as opposed to awaiting multiple, potentially inconsistent, decisions from other courts that may have a theoretical interest in these issues.

In sum, Defendants have merely asked this Court to exercise jurisdiction over parties and issues already before it. This Court can and necessarily will be called upon to decide these issues and thereby define the proper scope of discovery in this case.[2] Plaintiffs have failed to identify a single reason why this Court should not exercise its jurisdiction to resolve the disputes over the Customer subpoenas.[3]

---

deemed appropriate from the issuing court if, for example, they believed that more (or different) restrictions on their production obligations were necessary.

[2] As noted previously, the same defects that exist with the Customer subpoenas also exist with the discovery requests served on Defendants. (See Defs.' Mem. at 2-3.)

[3] Plaintiffs point out that only three of the nine subpoenaed customers have served formal written objections. (See, e.g., Pls.' Opp'n at 4, 8.) Conspicuously absent, however, is any representation by Plaintiffs that these entities have agreed to produce documents. Moreover, the lack of a formal response from some customers could be due to a variety of factors, including the failure to be properly served in the first place. For example, Plaintiffs failed to serve the subpoena to Cox Communications on that company's appropriate registered agent and, thus, service on Cox was improper.

2.   *Rule 26(c) Also Authorizes The Requested Relief.*

Plaintiffs ignore the fact that Defendants have sought relief from this Court

pursuant to Rule 26 in addition to Rule 45. Thus, even assuming arguendo that

Defendants must file separate motions in four different courts, as Plaintiffs contend, to

obtain relief under Rule 45 (see Pls.' Opp'n at 4-5), Rule 26 standing alone authorizes

this Court to grant in full the relief requested by Defendants. Rule 26(c) states that:

> [u]pon motion by a party or by the person from whom discovery is
> sought . . . and for good cause shown, the court in which the action is
> pending . . . may make any order which justice requires to protect a party or
> person from annoyance, embarrassment, oppression, or undue burden or
> expense, including one or more of the following:
>
> (1)  that the disclosure or discovery not be had;
>
> (2)  that the disclosure or discovery may be had only on specified
>      terms and conditions . . . ; [and]
>                        ***
> (4)  that certain matters not be inquired into, or that the
>      scope of the disclosure or discovery be limited to certain
>      matters; . . . .

Fed. R. Civ. P. 26(c)(1)(2), (4) (emphasis added). Rule 26(c) specifically contemplates

that a party, like Defendants here, may move for relief and that "the court in which the

action is pending" will decide the issue. Id. The Rule also expressly authorizes the

particular relief sought by Defendants -- i.e., "that certain matters not be inquired into,

or that the scope of . . . discovery be limited . . . ." Id. Rule 26(c) further contemplates

that such relief is authorized to protect parties like Defendants (and other persons like

third-parties) from burdensome and irrelevant discovery unrelated to the claims at issue

in the case.[4]

Defendants are separately entitled to move to enforce the provisions of Rule

26(b)(1), which state that "[p]arties [like Plaintiffs] may obtain discovery regarding any

matter, not privileged, that is relevant to the claim or defense of any party . . . ."[5] The

scope of discovery sought from third-parties, just like discovery sought from a party, is

necessarily subject to this requirement. See, e.g., Sphere Drake Ins. Ltd. v. All Am.

Life Ins. Co., 221 F. Supp. 2d 874, 882 (N.D. Ill. 2002) (granting protective order

regarding third-party subpoena where requested discovery was irrelevant to the claim at

issue); see also Pls.' Opp'n at 9 (acknowledging that "it is beyond doubt that subpoenas

issued pursuant to Rule 45 are subject to the parameters of Rule 26 . . . ."). If the

requested discovery falls outside the scope of Rule 26(b)(1), it is not permissible --

regardless of whether it is sought from a party or, as in this instance, by a party.

Inconceivably, it is Plaintiffs' position that this Court, which has handled this

case for three years and is most familiar with the claims and defenses, is nevertheless

---

[4] Plaintiffs wrongly suggest that Defendants can suffer no hardship from the third-party discovery because they do not have to produce any documents. (See Pls.' Opp'n at 8.) The needless complication and expansion of this case that would result from the requested discovery would necessarily impose undue burdens and expense on Defendants, who must participate in and monitor this third-party discovery.

[5] The only exception to this rule is that, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). As discussed herein, this provision cannot save Plaintiffs' subpoenas. First, there has been no prior order from this Court authorizing this discovery. Second, Plaintiffs have failed to establish that good cause exists for such an order under these circumstances. (See infra at 10-12.) Third, the majority of Plaintiffs' requests fail to possess the requisite connection even to the "subject matter involved in the action." (See id. at 12-15.)

powerless to issue orders regarding the scope of the discovery sought by a party to these

proceedings. (See Pls.' Opp'n at 4-6.) That is simply not the law. Under Rule 26, this

Court is given "wide discretion" in setting appropriate limits for discovery. Farnsworth

v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985). Defendants ask this

Court to exercise its discretion to prevent abuse of the discovery process.

**B.    Defendants Have Standing To Object To The Subpoenas.**

Plaintiffs also argue that Defendants lack standing to object to the Customer

Subpoenas. (See Pls.' Opp'n at 6-9.) Plaintiffs, however, concede that a party clearly

has a right to object to a third-party subpoena when that party asserts a personal right or

privilege regarding the documents at issue. See Pls.' Opp'n at 6-7; see also Defs.'

Mem. at 10-12; Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588, 591 (D. Kan.

2003). Under this standard, standing exists where, as is the case here, the third-party is

in possession of a party's confidential information, the production of which would be

called for under the subpoena. See, e.g., Sierra Rutile Ltd. v. Katz, No. 90 Civ. 4913

(JFK), 1994 WL 185751, at *2 (S.D.N.Y. May 11, 1994).

New Park Entertainment, L.L.C. v. Electric Factory Concerts, Inc., No. Civ. A.

98-775, 2000 WL 62315 (E.D. Pa. Jan. 13, 2000), addressed an analogous situation. In

that case, the plaintiffs served numerous subpoenas on third-parties doing business with

the defendants. The defendants objected to the subpoenas on various grounds, including

relevancy, asserting that the requested documents contained their "confidential research,

development and commercial information." Id. at *5. The court held that the
defendants' confidentiality interest in these documents gave them standing to challenge
third-party subpoenas. Id.

Plaintiffs do not and cannot dispute that the requests require the production of S-
A's confidential information and documents found in the Customers' files.[6]  Plaintiffs'
subpoenas, for example, seek documents on the type, quantity, price, terms, and
technical specifications of every type of product ever sold by S-A, among other types of
sensitive, confidential or proprietary information. (See Defs.' Mem. at 5-9.) S-A could
be injured in the marketplace through the disclosure of this information. That is all that
is required to establish standing. See, e.g., Stewart v. Mitchell Transp., No. 01-2546-
JWL, 2002 WL 1558210, at *6 (D. Kan. July 8, 2002) (entertaining defendants'
objections to third-party subpoenas where "at least the potential for injury exist[ed] if
the alleged confidential documents [were] disclosed"). For this reason, no disclosure
should be made unless the information sought satisfies Rule 26(b)(1). See, e.g.,
Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2, 197 F.3d
922, 926-27 (8th Cir. 1999) (affirming grant of motion to quash where requests were
irrelevant and would result in greater harm than benefit). Every time S-A's confidential

---

[6]  Indeed, Plaintiffs' Complaint acknowledges that S-A enters into confidentiality agreements with its
customers due to the exchange of confidential information that must necessarily occur between these
parties. (See Compl. ¶¶ 71, 86 (referencing confidentiality agreement between S-A and Rogers
Cable).)

information changes hands the Company's ability to protect its information is increasingly jeopardized.

The fact that S-A's Customers have <u>S-A's documents and confidential information</u> in their files gives S-A standing to comment on the circumstances of their production as if the discovery were directed to S-A. Indeed, Plaintiffs have asked for these same documents from S-A, and negotiations are ongoing between the parties regarding these requests. Under Plaintiffs' theory, they would be allowed to pursue S-A's documents from its customers, even where they could not seek the same discovery directly from S-A under Rule 26(b)(1). Such an absurd result would, among other problems, directly contradict the strong policy favoring a more limited scope of discovery from third-parties than from parties. <u>See</u> <u>Dart Indus. Co., Inc. v. Westwood Chem. Co.</u>, 649 F.2d 646, 649 (9th Cir. 1980). Moreover, if requests are beyond the proper scope of discovery for a party like S-A, the same result necessarily holds true as to any third-parties who possess the same information.

The expected entry of a confidentiality order in this case does not, as Plaintiffs suggest, alter Defendants' standing. <u>See</u> <u>New Park Entm't</u>, 2000 WL 62315, at *6-*7. Defendants are not relying "on the confidential nature of [the] documents as a basis for refusing to produce them . . . ." (Pls.' Opp'n at 7-8.) Instead, Defendants oppose only those aspects of the contemplated production that do not comply with Rule 26(b)(1). The confidential nature of the requested documents, however, gives Defendants the

right to be heard on their possible production, and this right is not limited to the

confidentiality issue.  See, e.g., Transcor, 212 F.R.D. at 591; Stewart, 2002 WL

1558210, at *3; New Park Entm't, 2000 WL 62315, at *5; Sierra Rutile Ltd., 1994 WL

185751, at *2.

### C.    Limitations Should Be Imposed On The Overly Broad and Irrelevant Aspects Of The Pending Requests.

Plaintiffs fail to justify their overly broad document requests.  Their bold

assertion that, even under the amendments to Rule 26(b)(1), "the scope of relevant

discovery is not limited to the four walls of the pleadings, even today" is simply

incorrect.  (Pls.' Opp'n at 10.)  That is precisely what the amendments to Rule 26(b)(1)

were designed to do, and even the cases Plaintiffs cite expressly state that relevance is

now more "closely tied to the actual allegations contained in the complaint."  Beauchem

v. Rockford Prods. Corp., No. 01 C 50134, 2002 WL 100405, at *1 (N.D. Ill. Jan. 24,

2002).[7]

---

[7]  Plaintiffs also persist in citing to cases that discuss Rule 26(b)(1) prior to the recent amendment. (See, e.g., Pls.' Opp'n at 10 n.7.)  Plaintiffs' discovery must, however, comply with the new version of Rule 26(b)(1) that was specifically designed to narrow the scope of "relevant" discovery.  See, e.g., Collens v. City of New York, 222 F.R.D. 249, 252 (S.D.N.Y. 2004) ("the amendments were designed to 'focus [discovery] on the actual claims and defenses involved in the action'") (quoting Advisory Committee Notes to Rule 26(b)(1)); United States ex rel. Stewart v. Louisiana Clinic, No. Civ.A. 99-1767, 2003 WL 21283944, at *8 (E.D. La. June 4, 2003) ("Rule 26(b)(1) was amended to narrow the scope of relevancy from 'subject matter' of the action to 'claims or defenses of any party.'") (quoting Advisory Committee Notes).

### 1.    *Plaintiffs' Requests Are Overly Broad As To Time Period.*

Defendants do <u>not</u> "concede that Plaintiffs are entitled to documents generated prior to the Class Period . . . ." (Pls.' Opp'n at 12 n.9.) Defendants have consistently maintained their belief that the relevant time period for discovery in this case should be the proposed class period (<u>e.g.</u>, January 18, 2001 - August 16, 2001). (<u>See</u> Defs.' Mem. at 4-5, 12.) Defendants, however, take seriously their obligation to confer in good faith regarding discovery disputes. In the hopes of reaching a compromise on similar document requests to Defendants, Defendants previously suggested that, at the most, Plaintiffs should receive documents for the entirety of S-A's Fiscal Year 2001 (which began on July 1, 2000) -- six months of which are encompassed within Plaintiffs' class period. Thus, to the extent that Plaintiffs feel they need some point of reference prior to the proposed class period, Defendants' proposal satisfies this concern. Given the similar issues presented as to the third-party discovery, Defendants suggested that the time period for third-party discovery be consistent with their suggested compromise. (<u>See</u> Defs.' Mem. at 12.)

Plaintiffs' attempt to find fault with this proposal utterly fails. They persist in arguing in favor of an arbitrary start date of January 1, 2000, which has no relationship to S-A's Fiscal Year. (<u>See</u> Pls.' Opp'n at 12-15.) S-A's Fiscal Year does not track the calendar year, but instead begins in July and runs through June. (<u>See</u> Compl. ¶ 29.)

Plaintiffs' proposal would lead to the production of documents for a portion of the prior

fiscal year (e.g., part of Fiscal Year 2000) for which they have no claims whatsoever.

In response, Plaintiffs argue that they "have made numerous allegations regarding

[S-A]'s year 2000 contractual relationships with the customers that have been

subpoenaed, which relationships are, in part, the subject of many of the false and

misleading statements in issue here." (Pls.' Opp'n at 12-13 (citing Compl. ¶¶ 56-71).)

A review of the listed Complaint cites reveals, however, that these alleged "contractual

relationships" -- discussed in the Complaint's "Background" section -- occurred after

July 1, 2000 and, thus, being in Fiscal Year 2001, would be encompassed within

Defendants' proposal. (See Compl. ¶¶ 56-71.)[8]

Plaintiffs also argue that the nature of their claims, i.e., allegations of artificial

inflation of revenue through supposed channel-stuffing, would be "virtually impossible

to detect" without an examination of sales and sales trends in the reporting periods both

before and after the time period when the alleged manipulations occurred. (Pls.' Opp'n

at 14.) This argument is without merit. First, Plaintiffs already have access to both pre-

and post-class period sales data because this information is available publicly and they

do not allege that it is false or misleading in any respect. In fact, Plaintiffs attached to

---

[8] Plaintiffs also cite to two paragraphs simply because they reference the year 2000. (See Pls.' Opp'n at 13 (citing Compl. ¶¶ 18, 75).) These paragraphs merely quote from S-A's public statements, which from time to time reference prior years. This fact does not mean that Plaintiffs are entitled to a broad array of documents beyond the Fiscal Year at issue in the case and, in any event, Plaintiffs do not allege that these particular statements were false. (See Compl. ¶¶ 18, 75.)

their Complaint sales charts they prepared using this publicly available information. (See Compl. ¶ 44; see also id., Ex. A.)

Second, "channel-stuffing" or "trade loading" as defined by Plaintiffs is the practice of "inducing customers to purchase and warehouse product not then needed, enabling the supplier to book a greater volume of sales in the present quarter." (Pls.' Opp'n at 13-14 (emphasis added).) Thus, according to Plaintiffs, the information they seek is whether S-A's customers were convinced to take more product in the quarters that make up the class period than they actually needed at that time. Even assuming arguendo that such information exists, there is no need to look beyond the class period for that information. Third, under Defendants' proposed compromise described above, Plaintiffs would have access to non-public "sales data from quarters in which the [alleged] channel-stuffing did not occur." (Pls.' Opp'n at 14.) Plaintiffs cannot explain why additional months of data -- all beyond the Fiscal Year at issue in this case -- are necessary.

Similarly, Plaintiffs have never articulated a coherent rationale for why documents pertaining to time periods beyond the close of the class period are necessary to the prosecution of their claims. Documents about post-class period events and

subsequent reporting periods will shed no light on what Defendants knew (or when) about demand for digital set-tops during the alleged class period.[9]

Plaintiffs' citations that supposedly support a broader time period for discovery are distinguishable. See, e.g., Morse v. Abbott Labs., No. 90 C 1982, 1991 WL 262896, at *1 (N.D. Ill. Dec. 6, 1991) (discovery sought in case involving unsanitary manufacturing conditions in alleged violation of FDA regulations). Also, the only securities case cited by Plaintiffs, Upton v. McKerrow, No. 1:94-CV-353MHS, 1996 WL 193807, at *3 (N.D. Ga. Feb. 20, 1996), is inapposite because Defendants here would not object to the functional equivalent of the holding in Upton -- e.g., six months of pre-class period discovery and reasonable parameters for the collection of documents generated after the class period that specifically relate to that time period. See id. at *3. Upton, therefore, does not support Plaintiffs' request for an even broader time frame.

2.    *Plaintiffs' Requests Are Overly Broad As To Product Type.*

Plaintiffs allege that they and the class they seek to represent were injured when the Company announced on August 16, 2001 that its customers, the cable operators,

---

[9] In prior negotiations, Defendants suggested that, for purposes of their document production, they would agree to the same terms ordered by Judge Cooper in another recent securities case -- namely, that non-privileged documents generated after the class period that specifically concern that time period would also be produced to the extent they were discovered during the collection process. See In re Profit Recovery Group Int'l, Inc. Sec. Litig., No. 1:00-CV-1416-CC, slip op. at 1 (N.D. Ga. Oct. 23, 2002) (attached hereto as Exhibit A). The defendants in Profit Recovery agreed to attempt to identify and collect such documents, but this obligation was subject to the caveat that their collection efforts must necessarily focus on the prior period in order to provide workable parameters that could be reasonably and efficiently executed. See id. at 1-2. Plaintiffs refused to accept this proposal for purposes of this case.

were reporting a decline in the rate of deployment for digital set-top boxes. (See Compl. ¶¶ 18, 219, 225.) The "truth" Plaintiffs claim was concealed was a decline in the demand for a single product line -- digital set-top boxes. (Id.) Plaintiffs do not assert any claims based on the alleged failure to disclose similar downward trends in any other business line.

Because, under Rule 26(b)(1), Plaintiffs may seek discovery only as it relates to their actual claims, their discovery efforts should necessarily focus on digital set-top boxes and, at the most, the related equipment and software designed to be used exclusively with S-A's digital set-tops. Plaintiffs nevertheless persist in arguing that they are entitled to documents on purchases of any other S-A equipment by these Customers like analog set-tops, transmitters, cable modems, and transmission equipment because they speculate these other sales "are related to Defendants' abilities to accurately predict current and future sales, sales tactics and customer incentives, and relevant to determine the extent of the [alleged] trade loading itself during the relevant quarters." (Pls.' Opp'n at 3.) The Complaint does not even discuss all of these product types and does not allege that "channel-stuffing" or "trade loading" occurred as to all these product types.[10]

---

[10] Plaintiffs cite to only one reference (not two as they suggest) to cable modems (see Compl. ¶ 209), and there are no references in the Complaint to analog set-top boxes or transmitters. The one reference to cable modems cited by Plaintiffs merely quotes from a company press release, reporting on an agreement with an overseas customer (i.e., not one of the subpoenaed entities) to buy a certain number

Plaintiffs' Complaint does discuss the sale of transmission equipment to <u>two customers</u> -- AT&T and Rogers Communication. (<u>See, e.g.</u>, Compl. ¶¶ 51-53, 68, 70, 116.) <u>Plaintiffs do not, however, allege that they were harmed by any failure to disclose adverse trends in the transmission business line</u>. Plaintiffs' Complaint concedes that, prior to the start of the alleged class period, S-A publicly disclosed that it lost transmission sales to AT&T. (<u>See</u> Compl. ¶¶ 52-53, 56-57, 73.) S-A also repeatedly disclosed throughout the alleged class period a downward trend in the transmission business in general. (<u>See</u> Compl. ¶¶ 73, 75, 167, 172-73, 190.) Allegations that S-A lost transmission sales from one customer (AT&T) cannot possibly support Plaintiffs' broad-reaching discovery requests to other Customers regarding their potential transmission purchases. Indeed, the only discussion of specific transmission sales in the Complaint pertains to one customer -- Rogers -- and Plaintiffs apparently chose not to pursue any documents from Rogers.[11]



[12]

---

of digital set-tops and modems. Plaintiffs do not dispute the accuracy of this particular statement and do not contend that there were any alleged channel-stuffing activities concerning modems.

[11] Plaintiffs apparently asked Rogers to accept service of a subpoena because, as a Canadian company, additional steps would have been required to serve Rogers. (<u>See</u> Defs.' Mem., Ex. B.) Rogers apparently refused to accept service and noted that, even if properly served, they would nevertheless still object to producing the requested documents. (<u>See id.</u>) To date, Defendants have received no notice of any further attempt by Plaintiffs to seek documents from Rogers.

[12] Plaintiffs requested a deposition pursuant to Fed. R. Civ. P. 30(b)(6) to educate themselves as to the various product types manufactured by S-A. Mr. Butdorf served as the Company's 30(b)(6) deponent. Copies of relevant pages from Mr. Butdorf's testimony are attached hereto as Exhibit B. At the

REDACTED

Data on sales of transmission products (or other products unrelated to digital set-top boxes) cannot assist Plaintiffs in attempting to prove their allegations that Defendants "stuffed the channels" for digital set-tops. Unbridled discovery as to these other products lacks the requisite connection to Plaintiffs' claims. Discovery from third-parties (as with parties to this case) should be limited to S-A's digital set-top product line during Defendants' proposed compromise time period (i.e., July 1, 2000 through August 16, 2001).

---

deposition, the parties agreed that Mr. Butdorf's testimony would be treated as confidential for purposes of this case and, therefore, this brief and related deposition excerpts are being filed under seal pursuant to the parties' agreement.

Respectfully submitted, this 8th day of December, 2004.

Oscar N. Persons
Georgia Bar No. 573500
Susan E. Hurd
Georgia Bar No. 379628
Kelly C. Wilcove
Georgia Bar No. 185682
Irene E. Baker
Georgia Bar No. 033663

ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA  30309-3424
(404) 881-7000

Counsel for Defendants

## LOCAL RULE 7.1(D) CERTIFICATION

Pursuant to Local Rule 7.1(D), counsel for Defendants certify that the text of this Reply Memorandum has been prepared with one of the font and point selections (i.e., Times New Roman, 14 Point) approved by this Court in Local Rule 5.1(B).

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| IN RE SCIENTIFIC-ATLANTA, INC. SECURITIES LITIGATION | CIVIL ACTION FILE NO. 1:01-CV-1950-RWS |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the within and foregoing

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION**

**TO QUASH OR MODIFY SUBPOENAS SERVED ON SCIENTIFIC-**

**ATLANTA'S CUSTOMERS OR, IN THE ALTERNATIVE, FOR PROTECTIVE**

**ORDER** addressed as follows:

### VIA HAND DELIVERY

Craig G. Harley
David A. Bain
Meryl W. Edelstein
CHITWOOD & HARLEY LLP
2900 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA  30309

**VIA U.S. MAIL**

Lynn L. Sarko
Juli Farris Desper
Elizabeth A. Leland
KELLER ROHRBACK LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052


Maya Saxena
Robert R. Adler
MILBERG WEISS BERSHAD
   & SCHULMAN LLP
Tower One, Suite 600
5200 Town Center Circle
Boca Raton, Florida 33486

This 8th day of December, 2004.

Susan E. Hurd
Georgia Bar No. 379628